*PRELIMINARY PRINT*

VOLUME 606 U. S. PART 1
PAGES 259–304

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

JUNE 26, 2025

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# RILEY *v.* BONDI, ATTORNEY GENERAL

## CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 23–1270.   Argued March 24, 2025—Decided June 26, 2025

The Department of Homeland Security (DHS) sought to remove Pierre Riley, a citizen of Jamaica, from the United States under expedited procedures for aliens convicted of aggravated felonies.   On January 26, 2021, the DHS issued a "final administrative review order" (FARO) directing Riley's removal to Jamaica.    Under 8 U. S. C. §1228(b)(3), aliens may petition courts of appeals for FARO review.   While Riley did not contest his removal from the United States, he sought relief under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), telling an immigration officer that he would likely be killed by a drug kingpin if he returned to Jamaica.   The officer concluded that Riley did not demonstrate reasonable fear of persecution, but an Immigration Judge (IJ) disagreed and concluded that Riley was entitled to relief under the CAT, which prohibits removal to countries where torture is likely.   The IJ sent Riley's case to a "withholding-only" proceeding to determine whether he could be removed to Jamaica.   At that proceeding, the IJ found Riley credible and granted deferral of removal to Jamaica under the CAT.   The DHS appealed to the Board of Immigration Appeals (BIA), which vacated the IJ's order and allowed the FARO's enforcement.   Three days later, Riley filed a petition for review in the Fourth Circuit.   The Fourth Circuit dismissed Riley's petition for lack of jurisdiction, holding that (1) aliens cannot obtain review of BIA decisions in "withholding-only" proceedings by filing within 30 days of that decision, and (2) §1252(b)(1)'s 30-day filing deadline is jurisdictional, not merely a mandatory claims-processing rule.

*Held*:

   1. BIA orders denying deferral of removal in "withholding-only" proceedings are not "final order[s] of removal" under §1252(b)(1).

   An "order of removal" includes an "order of deportation," 110 Stat. 3009–627, which, in turn, is defined as an order "concluding that the alien is deportable or ordering deportation," §1101(a)(47)(A).   The FARO issued by DHS on January 26, 2021, is "the final order of removal" under the statute because it held that Riley was deportable and directed that he be removed from the United States.   The order was also the Executive's *final* determination on the question of removal.

An order of removal becomes final at the earlier of two points: (1) "a determination by the [BIA] affirming such order," or (2) "the expiration of the period in which the alien is permitted to" petition the BIA for review of the order. § 1101(a)(47)(B). Because an alien in streamlined removal proceedings cannot seek review of his FARO before an IJ *or* the BIA, the period to seek review "expire[s]" as soon as the FARO is issued—meaning that the order becomes final immediately upon issuance.

The Court's decisions in *Nasrallah* v. *Barr*, 590 U. S. 573, and *Johnson* v. *Guzman Chavez*, 594 U. S. 523, buttress this conclusion. In *Nasrallah*, the Court noted that CAT orders are not final removal orders because they do not conclude that an alien is deportable or order deportation. 590 U. S., at 582. The Court held that CAT orders do not "disturb" or "affect the validity" of final removal orders, so they do not merge into final orders because only rulings affecting the validity of a final removal order will merge into the final order for purposes of judicial review. *Ibid.* *Guzman Chavez* addressed whether aliens could be released during the pendency of their withholding-only proceedings. The Court held that the directive that they be removed had become "administratively final" regardless of their pending CAT proceedings, and "the finality of [an] order of removal does not depend in any way on the outcome of the withholding-only proceedings." 594 U. S., at 533, 539–540.

The Government argues that the question in *Guzman Chavez* was whether the removal order in that case was "administratively final" for purposes of detention, not whether a removal order constitutes "the final order of removal" for purposes of filing. But this argument conflates when a petition for review must be filed with the issues that may be adjudicated in that proceeding. The Government then compares the purposes of finality in §§ 1252(b)(1) and 1231, arguing that the meaning differs. Although finality may serve different purposes under different statutes, it does not follow that the meaning of finality necessarily varies. The Government raises legitimate practical concerns about removal orders becoming final before withholding-only relief is decided, but the Court must follow statutory text and precedent. The text and precedents make clear that the FARO is the final order of removal, and withholding-only proceedings do not disturb the finality of otherwise final removal orders. Pp. 266–272.

2. The 30-day filing deadline under § 1252(b)(1) is a claims-processing rule, not a jurisdictional requirement.

Categorizing a rule as jurisdictional has important consequences that may disrupt the orderly and efficient adjudication of cases in the federal courts. Court precedent shows reluctance to label rules "jurisdic-

tional" unless Congress clearly signals that intent. While Congress
need not use "magic words" to indicate that a rule is jurisdictional, *Henderson* v. *Shinseki*, 562 U. S. 428, 436, the Court's recent decisions require an exceedingly strong signal for jurisdictional classification. That
demanding requirement is not met here.

Section 1252(b)(1) states petitions "must be filed not later than 30
days after the date of the final order of removal." This language tells
*aliens* what to do to obtain judicial review, but it provides no directives
to *courts*. It does not reference jurisdiction and lacks any language
"demarcat[ing] a court's power." *Harrow* v. *Department of Defense*,
601 U. S. 480, 484. The placement of the statute also suggests it is not
jurisdictional because neither the particular subsection nor the broader
section in which the deadline is placed concerns jurisdiction.

Precedents extending back nearly 20 years support classifying
§ 1252(b)(1)'s deadline as a claims-processing rule. Before *Arbaugh* v.
*Y & H Corp.*, 546 U. S. 500, the Court occasionally classified "non-
extendable time limit[s]" as jurisdictional. *Id.*, at 510 (citing *United
States* v. *Robinson*, 361 U. S. 220, 229). In *Arbaugh*, however, the
Court made clear that courts should only treat statutory limitations as
jurisdictional if Congress "clearly states" that they have jurisdictional
consequences. 546 U. S., at 515. The Court's cases since *Arbaugh*
have almost uniformly found that the provisions at issue fail this de-
manding test. The one exception is *John R. Sand & Gravel Co.* v.
*United States*, 552 U. S. 130, 138, where the Court would not overturn
a "definitive earlier interpretation" of a statute as jurisdictional without
clear congressional directive. There, century-old decisions held that
the provision was truly jurisdictional. *Id.*, at 134–135.

While *Stone* v. *INS*, 514 U. S. 386, 405, characterized § 1252(b)(1)'s
predecessor provision as "jurisdictional," it used the term loosely and
did not "atten[d] to the distinction between 'jurisdictional' rules (as we
understand them today) and nonjurisdictional but mandatory ones."
*Santos-Zacaria* v. *Garland*, 598 U. S. 411, 421. Since *Stone*, the Court
has repeatedly found that filing deadlines, including mandatory ones,
are not jurisdictional.

Section 1252's 30-day filing rule is not jurisdictional, but because the
Government does not wish to press that ground for dismissal the Court's
holding does not preclude this case from proceeding on remand.
Pp. 272–277.

Vacated and remanded.

ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and
THOMAS, KAVANAUGH, and BARRETT, JJ., joined in full, and in which SOTO-
MAYOR, KAGAN, GORSUCH, and JACKSON, JJ., joined only as to Part II–B.

THOMAS, J., filed a concurring opinion, *post*, p. 277.  SOTOMAYOR, J., filed
an opinion dissenting in part, in which KAGAN and JACKSON, JJ., joined
in full, and in which GORSUCH, J., joined except as to Part IV, *post*,
p. 281.

*Keith Bradley* argued the cause for petitioner.  With him
on the briefs were *Christopher F. Haas*, *Jeffrey Walker*, and
*Samuel Ballingrud.*

*Ephraim A. McDowell* argued the cause for respondent in
support of petitioner.  With him on the briefs were *Acting
Solicitor General Harris*, *Solicitor General Prelogar*, *Prin-
cipal Deputy Assistant Attorney General Boynton*, *Deputy
Solicitor General Gannon*, *John W. Blakeley*, *Melissa L.
Neiman-Kelting*, *Dawn S. Conrad*, and *Elizabeth K.
Ottman.*

*Stephen J. Hammer*, by invitation of the Court, 604 U. S.
1040, argued the cause and filed a brief as *amicus curiae*
in support of the judgment below.  With him on the brief
were *Allyson N. Ho*, *Jonathan C. Bond*, *Robert A. Batista*,
*M. Christian Talley*, *Lavi M. Ben Dor*, and *Patrick J.
Fuster.**

_____

*Briefs of *amici curiae* urging reversal were filed for Administrative
Law Professors by *Zachary D. Tripp*, *Joshua M. Wesneski*, and *Alan B.
Morrison, pro se*; for the American Immigration Lawyers Association
et al. by *Sharon K. Hogue*; for Civil Procedure and Federal Courts Profes-
sors by *Jennifer Bennett*; for the Constitutional Accountability Center
et al. by *Elizabeth Wydra*, *Brianne J. Gorod*, *Trina Realmuto*, and *Kris-
tin Macleod-Ball*; for Immigration Legal Service Providers by *Tobias S.
Loss-Eaton*, *Charles Roth*, *Aimee Mayer-Salins*, *Melissa Crow*, and *Rob-
ert Pauw*; and for Juan E. Méndez, Former U. N. Special Rapporteur on
Torture, by *David M. Gossett.*

Briefs of *amici curiae* urging affirmance were filed for Former U. S.
Attorneys General by *R. Trent McCotter* and *Gene P. Hamilton*; and for
the Immigration Reform Law Institute by *Christopher J. Hajec.*

Briefs of *amici curiae* were filed for the Center for Litigation
and Courts by *Scott Dodson*, *Leah Spero*, and *Joshua P. Davis*; and
for the Pacific Legal Foundation by *Damien M. Schiff* and *Allison D.
Daniel.*

JUSTICE ALITO delivered the opinion of the Court.

In this case, we must decide whether the Court of Appeals for the Fourth Circuit erred in dismissing petitioner Pierre Riley's petition for review on jurisdictional grounds. And in order to make that decision, we must decide two subsidiary questions: (1) whether the 30-day filing deadline for judicial review of a "final order of removal," 8 U. S. C. §1252(b)(1), is a jurisdictional requirement or simply a mandatory claim-processing rule; and (2) whether an alien can obtain review of a Board of Immigration Appeals (BIA) decision in a "withholding-only" proceeding (*i. e.*, one in which removal from the United States is not at issue) by filing a petition for review within 30 days of that decision.

The answers to these questions matter in this case because Riley filed a petition for review within 30 days after a BIA order in his withholding-only proceeding but long after the issuance of a "final administrative review order" (FARO) that commanded his removal from the United States. The Court of Appeals held that Riley's petition was filed too late, and because it viewed the 30-day deadline as jurisdictional, it dismissed his petition. We now vacate and remand.

Taking the second question first, we hold that a BIA order in a withholding-only proceeding is not a "final order of removal," and therefore the 30-day filing deadline cannot be satisfied by filing a petition for review within 30 days of the BIA's withholding-only order. Second, we hold that the 30-day filing deadline is not jurisdictional. Because the Government has chosen not to seek dismissal of Riley's case on that ground, we vacate the judgment below and remand for further proceedings.

I

In 1995, Pierre Riley, a citizen of Jamaica, entered the United States on a B–2 tourist visa that allowed him to stay for six months, but he did not depart when that time was up. 2 App. 54. He became a member of "a far-reaching and well-organized" drug trafficking gang and was convicted in 2008

for conspiracy to distribute and to possess with intent to distribute more than 1,000 kilograms of marijuana, as well as for possession of a firearm in furtherance of a drug-trafficking crime. See *United States* v. *Riley*, 2008 WL 2662277, *1–*2 (SDNY, July 7, 2008). He was sentenced to 25 years' imprisonment but was released in January 2021. *Riley* v. *Garland*, 2024 WL 1826979, *1 (CA4, Apr. 26, 2024) (*per curiam*).

Shortly thereafter, immigration authorities took Riley into custody and sought his removal. Because he had been convicted of an aggravated felony, his case proceeded along the supposedly streamlined track that Congress created in 1996. See 8 U. S. C. § 1228; Antiterrorism and Effective Death Penalty Act of 1996, § 440, 110 Stat. 1277–1279. Under this process, if an immigration officer concludes that an alien was convicted of an aggravated felony, the officer issues a "Notice of Intent" to deport. 8 CFR § 238.1(b)(1) (2024). The alien may challenge that determination in writing within 10 days after the notice of intent is issued. § 238.1(c)(1). If the immigration officer finds that the alien is removable, or if the alien declines to challenge removability, the officer issues a FARO specifying the country to which the alien must be deported. §§ 238.1(d)(1), (f)(2). The alien may then petition a court of appeals for review. See 8 U. S. C. § 1228(b)(3).

In this case, it was undisputed that Riley had been convicted of an aggravated felony, and therefore on January 26, 2021, the Department of Homeland Security (DHS) issued a FARO directing that Riley be sent back to Jamaica.

Riley did not contest his removal from the United States, but he resisted return to Jamaica under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (Convention or CAT), Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U. N. T. S. 113. Article Three of the Convention prohibits a signatory state from sending a person to another nation if "there are substantial grounds for believing that he would be in danger of being

subjected to torture." The United States became a full party to the CAT in 1994, see United Nations, General Assembly, Report of the Committee Against Torture, 55 U. N. GAOR Supp. No. 55, p. 44, U. N. Doc. A/55/44 (2000), and as subsequently required by legislation, see Foreign Affairs Reform and Restructuring Act of 1998, § 2242(b), 112 Stat. 2681–822, regulations implementing the CAT's requirements were then adopted. As relevant here, these regulations prohibit the removal of an alien to a country where torture is likely. See generally 8 CFR § 208.16.

Seeking relief under the CAT, Riley told an immigration officer that a wealthy and powerful Jamaican drug kingpin had it in for Riley's family, had killed two of his cousins, was influential with the police and politicians in Jamaica, and would likely kill Riley if he was returned to any place in that country. See 2 App. 66–70. The officer concluded that Riley did not demonstrate reasonable fear of persecution, but an Immigration Judge (IJ) disagreed and therefore sent Riley's case to what is called a "withholding-only" proceeding— that is, a proceeding at which the only issue is whether the alien may be removed to his home country.

At Riley's withholding-only proceeding, the IJ found Riley credible and granted deferral of removal to Jamaica under the CAT. 2024 WL 1826979, *1.

The DHS appealed that decision to the BIA, which found that Riley's claim was "not supported by sufficient objective evidence." 1 App. 50. Accordingly, the BIA vacated the IJ's order and thus allowed the FARO to be enforced. 2024 WL 1826979, *1.

Three days after the issuance of that order, Riley filed a petition for review in the U. S. Court of Appeals for the Fourth Circuit, but the court dismissed the petition for lack of jurisdiction. It held that the final order of removal in Riley's case was the FARO issued on January 26, 2021, not the later BIA order denying CAT relief. This meant that Riley's petition had not been filed on time, and because the

court thought that the 30-day filing deadline in §1252(b)(1) is jurisdictional, it dismissed Riley's petition. *Id.*, at \*1–\*2.

In holding that the 30-day filing deadline is jurisdictional, the Fourth Circuit joined the Seventh Circuit, but its holding conflicted with decisions of the Fifth and Ninth Circuits. Compare *Martinez* v. *Garland*, 86 F. 4th 561, 571–572 (CA4 2023); *F. J. A. P.* v. *Garland*, 94 F. 4th 620, 626 (CA7 2024), with *Argueta-Hernandez* v. *Garland*, 87 F. 4th 698, 705 (CA5 2023); *Alonso-Juarez* v. *Garland*, 80 F. 4th 1039, 1046–1047 (CA9 2023). And in holding that the 30-day filing deadline begins to run when a FARO is issued, the Fourth Circuit joined the Second Circuit, see *Bhaktibhai-Patel* v. *Garland*, 32 F. 4th 180, 192–194 (CA2 2022), but its decision was at odds with decisions of numerous other Circuits, most of which were handed down before our decisions in *Nasrallah* v. *Barr*, 590 U. S. 573 (2020), and *Johnson* v. *Guzman Chavez*, 594 U. S. 523 (2021), analyzed related issues. See *Jimenez-Morales* v. *Attorney Gen.*, 821 F. 3d 1307, 1308 (CA11 2016); *Garcia* v. *Sessions*, 856 F. 3d 27, 35 (CA1 2017); *Bonilla* v. *Sessions*, 891 F. 3d 87, 90, n. 4 (CA3 2018); *Argueta-Hernandez*, 87 F. 4th, at 706; *F. J. A. P.*, 94 F. 4th, at 635–636; *Alonso-Juarez*, 80 F. 4th, at 1046; *Arostegui-Maldonado* v. *Garland*, 75 F. 4th 1132, 1142–1143 (CA10 2023); *Kolov* v. *Garland*, 78 F. 4th 911, 918–919 (CA6 2023).

We granted certiorari to resolve these two splits. *Riley* v. *Garland*, 604 U. S. 1007 (2024). Because the Government agreed with Riley's position on both issues, we appointed Stephen J. Hammer as *amicus curiae* to defend the judgment below. 604 U. S. 1040 (2024). He has ably discharged his responsibilities.

## II

### A

Under 8 U. S. C. §1252(b)(1), a petition for review of a "final order of removal" must be filed within 30 days of that order. Riley and the Government argue that Riley's peti-

tion was filed on time because it was filed within 30 days of the BIA order denying deferral of removal, and we must therefore decide whether that order is a "final order of removal." We conclude that it is not.

1

The statutory text speaks directly and clearly to this question. While the Immigration and Nationality Act does not define the term "order of removal," any statutory reference to "an order of removal" is "deemed to include a reference to . . . an order of deportation." Illegal Immigration Reform and Immigrant Responsibility Act of 1996, §309(d)(2), 110 Stat. 3009–627. An "order of deportation," in turn, is defined as an order "concluding that the alien is deportable or ordering deportation." 8 U. S. C. §1101(a)(47)(A). So an "order of removal" must have those same characteristics.

We must therefore identify which order concluded that Riley is "deportable" and commanded his deportation, and it is clear that the qualifying order is the FARO issued by DHS on January 26, 2021. That order held that Riley was deportable and directed that he be removed from the United States. See 1 App. 8.

The order was also the Executive's *final* determination on the question of removal. An order of removal becomes final at the earlier of two points: (1) "a determination by the [BIA] affirming such order," or (2) "the expiration of the period in which the alien is permitted to" petition the BIA for review of the order. §1101(a)(47)(B). This statutory definition ties finality to agency review. Because an alien in streamlined removal proceedings cannot seek review of his FARO before an IJ *or* the BIA, the period to seek review "expir[es]" as soon as the FARO is issued—meaning that the order becomes final immediately upon issuance. Therefore, under a straightforward reading of the statutory text, Riley's FARO constituted "the final order of removal" in this case.

2

Our decisions in *Nasrallah* and *Guzman Chavez* buttress this conclusion. Although the ultimate issue in each of those cases differed from the question now before us, both decisions are instructive.

In *Nasrallah*, the question was whether the alien could mount a factual challenge to the denial of relief under the CAT. Because the alien had been convicted of aggravated felonies, § 1252(a)(2)(C) prevented him from challenging the factual findings on the basis of which his removal had been ordered. See 590 U. S., at 576–577, 581. But the Government argued that § 1252(a)(2)(C), in combination with § 1252(b)(9) (the so-called "zipper clause," see *Guerrero-Lasprilla* v. *Barr*, 589 U. S. 221, 230 (2020)), also barred the alien from raising a factual challenge to his CAT order. See Brief for Respondent in *Nasrallah* v. *Barr*, O. T. 2019, No. 18–1432, p. 35. The zipper clause provides that judicial review of any "questions of law and fact" that arise in removal proceedings may occur "only in judicial review of a final order under this section." § 1252(b)(9). As the Government saw it, the zipper clause merged the disposition of the CAT claim into the final order of removal, and since the alien could not challenge the removal decision on factual grounds, the alien should also be unable to challenge the factual basis for the denial of CAT relief. See 590 U. S., at 584–585.

We disagreed. See *id.*, at 582–583. We noted that a CAT order is not a final order of removal because "it is not an order 'concluding that the alien is deportable or ordering deportation.'" *Id.*, at 582. And what is more, we held, a CAT order "does not disturb" or "affect the validity" of a final order of removal. *Ibid.* We therefore held that the BIA's CAT order "d[id] not merge into" a final order of removal for purposes of judicial review because only "rulings that affect the validity of the final order of removal" merge into that order. *Ibid.*

Our reasoning in *Guzman Chavez* was similar.   The question there was whether the aliens in question could be released during the pendency of their withholding-only proceedings, and the answer to that question hinged on whether the aliens were being detained under § 1226(a)(2), which allows release before an alien is ordered removed, or under §§ 1231(a)(1)(B) and (a)(2), which make detention mandatory after removal has become "'administratively final.'"   594 U. S., at 527–528.   In *Guzman Chavez*, the aliens' removal had been ordered by DHS, and that determination was not being challenged, but proceedings in which they were seeking withholding of removal were still in progress.   *Id.*, at 532.

We held that the aliens were detained under §§ 1231(a)(1)(B) and (a)(2) and, as a result, could not be released.   *Id.*, at 533.   We reasoned that the directive that they be removed had become "administratively final" and that the pendency of the withholding-only proceedings did not alter that fact.   See *id.*, at 540.   Withholding-only proceedings, we said, do not "affec[t]" a removal order's "validity," and an alien's initiation of such proceedings "does not render non-final an otherwise 'administratively final' . . . order of removal."   *Ibid.* (internal quotation marks omitted).   "[T]he finality of the order of removal," we explained, "does not depend in any way on the outcome of the withholding-only proceedings."   See *id.*, at 539.

For present purposes, the lessons taught by *Nasrallah* and *Guzman Chavez* are clear.   An order denying relief under the CAT is not a final order of removal and does not affect the validity of a previously issued order of removal or render that order non-final.   That teaching dooms Riley's argument here.

3

Riley and the Government struggle to escape the reasoning of *Nasrallah* and *Guzman Chavez*, but their efforts are unconvincing.   Riley begins by arguing at length that in a

case like his, an order denying withholding of removal or CAT relief should be regarded as marking the point in time of a final order because it occurs last and enables the FARO to be executed. See Brief for Petitioner 29–34. But as already explained, this argument runs headlong into *Nasrallah* and *Guzman Chavez*.

The Government, while agreeing with the court below that a CAT or withholding-only relief order is not itself a final order of removal, also contends that a previously issued removal order cannot become final "until the conclusion of withholding-only proceedings." Brief for Respondent in Support of Petitioner 42–43. But *Guzman Chavez* makes clear that "the finality of [an] order of removal does not depend in any way on the outcome of the withholding-only proceedings." See 594 U. S., at 539.

The Government responds that the question in *Guzman Chavez* was whether the removal order in that case was "administratively final" for purposes of detention under § 1231(a)(1)(B), not whether, as in this case, a removal order constitutes "the final order of removal" under § 1252(b)(1)'s 30-day filing rule. See Brief for Respondent in Support of Petitioner 44–45. The Government notes that the language in these two provisions is not exactly the same, and it argues that there are two good reasons why the concept of finality should be seen as having different meanings under §§ 1252(b)(1) and 1231.

The first of these arguments analogizes review under § 1252(b)(1) to an appeal from a district court's "final decisio[n]" under 28 U. S. C. § 1291. See Brief for Respondent in Support of Petitioner 46. Since an appeal from a final district court decision provides the vehicle for reviewing all prior district court rulings, the Government argues that there should be a single review proceeding in a case like this. *Ibid.*

This argument conflates two separate issues: (1) when a petition for review must be filed and (2) the issues that may

be adjudicated in that proceeding. We agree that there can be only one review proceeding in a case like Riley's, and we also agree with the obvious proposition that review of the denial of CAT relief cannot take place until the BIA has denied such relief. That does not mean, however, that an order denying CAT relief is the final order of removal in a case like Riley's or that a previously issued removal order remains non-final until CAT relief is denied. Instead, the only conclusion that the Government's argument supports is that review of removability and withholding of removal should occur in a single appellate proceeding.

The Government's second argument regarding the meaning of finality in §§ 1252(b)(1) and 1231 rests on its understanding of the reasons why finality is important under those two provisions. Under § 1252(b)(1), the Government asserts, finality is important because it marks the point at which judicial review may be sought, whereas under § 1231, the finalization of administrative review is an event that heightens the risk that an alien, if not detained, will simply disappear. See *id.*, at 47.

We appreciate this difference, but just because finality may serve different purposes under different statutes, it does not follow that the meaning of finality necessarily varies. Here, Riley's argument does not provide an adequate reason to disregard the lessons of *Nasrallah* and *Guzman Chavez.*

4

The Government's final submission concerns the practical problems that it fears will arise if a removal order becomes final before the issue of withholding-only relief is decided. The Government worries that aliens like Riley who wish only to contest removal to their native country will not file a petition for review until their request for withholding of removal to that destination is denied. And if an alien files a petition for review before the question of withholding-only relief is settled, the Government fears that the proceed-

ing in the court of appeals may be wrapped up before the
BIA denies withholding-only relief, and the alien may thus
be deprived of any judicial review of that denial.   See Brief
for Respondent in Support of Petitioner 36–38.

These are legitimate practical concerns, but we must nev-
ertheless follow the statutory text and our prior precedents.
And in any event, these problems are not unavoidable.   In a
case like this, the Government can inform aliens of the need
to file a petition within 30 days after the issuance of a FARO,
and it can alert the court of appeals to the pendency of a
withholding-only proceeding so that review there can wait
until that issue is decided.   And if requests for withholding
of removal in cases like Riley's are decided expeditiously—
and that was the whole point of the supposedly streamlined
procedure adopted by Congress to effect the quick removal
of dangerous aliens*—petitions for review of removal orders
should not linger long on a court of appeals docket before
the withholding issue is ready for review.   Finally, if the
Government makes a general practice of what it has done in
Riley's case, *i. e.*, declining to press for enforcement of the
30-day filing rule, aliens who are mistaken about when a peti-
tion for review must be filed will not be hurt.

In sum, the statutory text and our precedents make clear
that the FARO is the final order of removal in this case, and
withholding-only proceedings do not disturb the finality of
an otherwise final order of removal.

B

We turn next to the question whether § 1252(b)(1)'s 30-day
deadline for filing a petition for review is "jurisdictional."

———————

*The Government reminds us that such proceedings have often lasted
many months and even years.  See Brief for Respondent in Support of
Petitioner 37 (citing *Martinez* v. *Garland*, 86 F. 4th 561, 574 (CA4 2023)
(Floyd, J., concurring in judgment); *Johnson* v. *Guzman Chavez*, 594 U. S.
523, 552 (2021) (Breyer, J., dissenting)).   That is surely not what Congress
anticipated when it enacted the streamlined procedure.

Opinion of the Court

This question is important because categorizing a rule as jurisdictional has important consequences that may disrupt the orderly and efficient adjudication of cases in the federal courts. Courts generally decide only the questions that are presented by the parties. See *Henderson* v. *Shinseki*, 562 U. S. 428, 434 (2011). If a party neglects to raise, concedes, or waives an issue, a court generally has no obligation to consider it. See *Wilkins* v. *United States*, 598 U. S. 152, 157–158 (2023); see also *Union Pacific R. Co.* v. *Locomotive Engineers*, 558 U. S. 67, 81–82 (2009) (noting that nonjurisdictional matters are "ordinarily forfeited if the party asserting the rule waits too long to raise the point" (internal quotation marks omitted)).

True jurisdictional requirements, however, are different. A federal court must always satisfy itself that it has jurisdiction. See *United States* v. *Kwai Fun Wong*, 575 U. S. 402, 408–409 (2015). Thus, even if the parties fail to spot a jurisdictional issue or agree that the court has jurisdiction, the court cannot proceed unless it makes an independent determination that it has jurisdiction. See *Henderson*, 562 U. S., at 434; see also 33 C. Wright, C. Koch, & R. Murphy, Federal Practice and Procedure § 8316, p. 50 (2018) ("[A] litigant's failure to comply with a jurisdictional bar deprives a court of all authority to hear a case, regardless of waiver or equitable considerations" (internal quotation marks and alteration omitted)).

Relying on a string of decisions issued during the past 19 years, Riley and the Government argue that the 30-day filing deadline in § 1252(b)(1) is not a jurisdictional rule but is instead a "quintessential claim-processing rul[e]." Brief for Petitioner 18 (internal quotation marks omitted); see Brief for Respondent in Support of Petitioner 18–21. *Amicus*, on the other hand, maintains that the 30-day deadline is jurisdictional, and because Riley did not file within 30 days of the final order of removal, he agrees with the Fourth Circuit that Riley's petition had to be dismissed. See Brief for Court-

Appointed *Amicus Curiae* in Support of Judgment Below 15–22. Riley and the Government have the better argument on this issue.

1

Because jurisdictional rules have a unique capacity to disrupt the orderly adjudication of disputes, we are reluctant to label a rule "jurisdictional" unless Congress has clearly signaled that the rule is meant to have that status. See *Kwai Fun Wong*, 575 U. S., at 409–410; *Henderson*, 562 U. S., at 435–436. We have said that Congress "need not use magic words in order to speak clearly" on the question whether a provision is jurisdictional, *id.*, at 436, but our pattern of recent decisions shows that we will not categorize a provision as "jurisdictional" unless the signal is exceedingly strong.

And in this case, that demanding requirement is not met.

We start with the text of the statute. Section 1252(b)(1) provides that "[t]he petition for review must be filed not later than 30 days after the date of the final order of removal." This language tells *aliens* what they must do if they want judicial review, but it provides no directives to *courts*. It makes no reference to jurisdiction and lacks any language "demarcat[ing] a court's power." *Harrow* v. *Department of Defense*, 601 U. S. 480, 484 (2024); see *Henderson*, 562 U. S., at 438; *Kwai Fun Wong*, 575 U. S., at 411.

The placement of the 30-day filing rule also weighs against *amicus*'s argument. Neither the particular subsection nor the broader section in which the deadline is placed concerns jurisdiction, but there are other sections in which the deadline could have been housed if it had been meant to have jurisdictional status. One possibility is § 1252(b)(4), which delineates the bounds of an appellate court's review authority. Another is § 1252(a)(2), which is entitled "Matters not subject to judicial review." (Boldface deleted.) But Congress eschewed those logical homes for a true jurisdictional provision.

2

Our precedents extending back nearly 20 years support classifying § 1252(b)(1)'s filing deadline as a claims-processing rule. Prior to our decision in *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500 (2006), we had occasionally classified "nonextendable time limit[s]" as jurisdictional. *Id.*, at 510 (citing *United States* v. *Robinson*, 361 U. S. 220, 229 (1960)). And in several other cases, we had issued what we have called "'drive-by'" jurisdictional statements—that is, we had loosely stated that "'jurisdictio[n]'" was lacking without considering whether the defect really concerned a limitation on the court's capacity to decide as opposed to a threshold requirement that a party had to satisfy in order to go forward. 546 U. S., at 511 (quoting *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 91 (1998)).

Since *Arbaugh*, however, we have been more disciplined in our use of the term "jurisdictional." In that case, we were required to decide whether satisfying Title VII's definition of a covered "employer," which turns on the number of employees in a work force, was a jurisdictional requirement. 546 U. S., at 503. In holding that this coverage requirement is *not* jurisdictional, we made clear that courts should treat a "statutory limitation" as jurisdictional only if Congress "clearly states" that the provision has jurisdictional consequences. *Id.*, at 515–516. And since *Arbaugh*, our cases have almost uniformly found that the provisions at issue failed to meet this very demanding test. See, *e. g.*, *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. 154, 166 (2010); *Henderson*, 562 U. S., at 441–442; *Sebelius* v. *Auburn Regional Medical Center*, 568 U. S. 145, 154–155 (2013); *Kwai Fun Wong*, 575 U. S., at 410–411; *Boechler* v. *Commissioner*, 596 U. S. 199, 211 (2022); *Wilkins*, 598 U. S., at 158–159; *Harrow*, 601 U. S., at 485.

The one exception to this pattern is *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130 (2008)—and, not surprisingly, that decision is the centerpiece of *amicus*'s ar-

gument. See Brief for Court-Appointed *Amicus Curiae* in Support of Judgment Below 17–22, 26–30. But the situation in *John R. Sand* was quite different from the situation here. In *John R. Sand*, decisions going back more than a century had held that the provision in question and its predecessors were truly jurisdictional. 552 U. S., at 134–135. They did not simply use that term but referred to the unique characteristics of jurisdictional provisions. See *Kendall* v. *United States*, 107 U. S. 123, 125–126 (1883); *Finn* v. *United States*, 123 U. S. 227, 232–233 (1887). And we held that we will not overturn a "definitive earlier interpretation" of a statute as jurisdictional unless Congress has provided a clear contrary directive. See *John R. Sand*, 552 U. S., at 137–138.

Here, *amicus* argues that *Stone* v. *INS*, 514 U. S. 386 (1995), is like the earlier jurisdictional decisions on which we relied in *John R. Sand*. In *Stone*, the Court characterized § 1252(b)(1)'s predecessor as "jurisdictional," 514 U. S., at 405, and *amicus* argues that this is a "definitive interpretation" that should be accepted, see Brief for Court-Appointed *Amicus Curiae* in Support of Judgment Below 11. But we see critical differences between *Stone* and the established precedents in *John R. Sand*.

*Stone*, to be sure, did describe a predecessor provision's filing deadline as "jurisdictional." 514 U. S., at 405; see also *Henderson*, 562 U. S., at 437. As we later explained, however, *Stone* used the term "jurisdictional" loosely and did not "atten[d] to the distinction between 'jurisdictional' rules (as we understand them today) and nonjurisdictional but mandatory ones." *Santos-Zacaria* v. *Garland*, 598 U. S. 411, 421 (2023). *Stone* suggested that all mandatory filing requirements are jurisdictional, see 514 U. S., at 405, but since that time, we have repeatedly found that filing deadlines, including some couched in mandatory terms, are not jurisdictional. In *Henderson*, we unanimously held that 38 U. S. C. § 7266(a)—which provides that "a person adversely affected" by a decision of the Board of Veterans' Appeals "shall file a

notice of appeal . . . within 120 days"—is not a jurisdictional time bar.  562 U. S., at 441–442.  We reached the same conclusion in *Boechler*, where the provision at issue, 26 U. S. C. § 6330(d)(1), set the deadline for filing a petition for review in the Tax Court.  596 U. S., at 211.  And most recently, in *Harrow*, we held that 5 U. S. C. § 7703(b)(1)(A), which provides that "any petition for review" of an order of the Merit Systems Protection Board "shall be filed within 60 days after the Board issues notice of the final order or decision," is non-jurisdictional.  601 U. S., at 485.

In these cases, like the present case, the statutes imposed requirements on litigants, not the courts; but even when the relevant statutory language was not litigant-focused, we have found that our clear statement rule was not satisfied. See, *e. g.*, *Kwai Fun Wong*, 575 U. S., at 410–411 (holding that 28 U. S. C. § 2401(b), which provides that "[a] tort claim against the United States shall be forever barred unless it is presented . . . within two years after such claim accrues," is non-jurisdictional); *Wilkins*, 598 U. S., at 159 (holding mandatory time bar non-jurisdictional).

In sum, we hold that § 1252's 30-day filing rule is not jurisdictional, but because the Government does not wish to press that ground for dismissal, it does not preclude this case from proceeding on remand.

\*    \*    \*

For these reasons, the judgment of the United States Court of Appeals for the Fourth Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS, concurring.

The Court today holds that the Fourth Circuit erred in treating the 30-day deadline in 8 U. S. C. § 1252(b)(1) as jurisdictional.  *Ante*, at 263.  I agree and join the Court's opinion

in full. I write separately to note that the Fourth Circuit may nevertheless lack jurisdiction over this suit for a different reason. Petitioner Pierre Riley sought review of an "Order of the Board of Immigration Appeals . . . entered on May 31, 2022." 1 App. 42 (emphasis deleted). Today's opinion makes clear that this May 31 order is not a "'final order of removal.'" *Ante,* at 267. Instead, it is an order denying relief under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT). Congress has specified that federal courts of appeals lack jurisdiction to review CAT orders "except *as part of* the review of a final order of removal." §2242, 112 Stat. 2681–822, note following 8 U. S. C. §1231 (emphasis added). Thus, on remand, the Fourth Circuit should consider whether it has jurisdiction to review a CAT order when the court is not conducting that review "as part of the review of a final order of removal." *Ibid.*

I

Through a series of statutory enactments, Congress has established a comprehensive framework for "[j]udicial review of a final order of removal." 8 U. S. C. §1252(a)(1). "[A] 'final order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'" *Nasrallah* v. *Barr,* 590 U. S. 573, 579 (2020) (quoting 8 U. S. C. §1101(a)(47)(A)).

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) grants the federal courts of appeals jurisdiction to review an alien's "final order of removal." §1252(a)(1). The statute makes the filing of a "petition for review" in accordance with the procedures outlined in IIRIRA the "sole and exclusive means" for an alien to obtain judicial review of such an order. §1252(a)(5).

IIRIRA contemplates that an alien facing removal may bring a "claim" under the CAT. §1252(a)(4). The CAT is an international human rights treaty that, as relevant here,

prohibits the removal of an alien to a country where the alien is likely to be tortured. CAT claims are addressed in the first instance by an immigration judge. The immigration judge's decision is appealable to the Board of Immigration Appeals, an administrative body within the Executive Branch.

This Court has made clear that "CAT orders are not the same as final orders of removal." *Nasrallah*, 590 U. S., at 582 (emphasis deleted). "An order granting CAT relief means only that, notwithstanding the order of removal, the [alien] may not be removed to the designated country of removal, at least until conditions change in that country." *Ibid.* "A CAT order is not itself a final order of removal because it is not an order 'concluding that the alien is deportable or ordering deportation.'" *Ibid.*

While IIRIRA acknowledges that an alien may bring a "claim" under the CAT, see § 1252(a)(4), jurisdiction for judicial review of CAT claims comes from a different statute— the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), see § 2242, 112 Stat. 2681–822, note following 8 U. S. C. § 1231. FARRA specifies that no federal court shall have "jurisdiction to consider or review claims raised under the [CAT] except as part of the review of a final order of removal pursuant to [8 U. S. C. § 1252]." § 2242(d), 112 Stat. 2681–822; see also 8 U. S. C. § 1252(a)(4) (stating that the filing of "a petition for review filed with an appropriate court of appeals in accordance with [§ 1252]" is the "sole and exclusive means for judicial review" of any CAT claim).

IIRIRA also contains a "zipper clause," which provides for consolidation in judicial review. The zipper clause states that "[e]xcept as otherwise provided in this section," judicial review of "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien" shall be "available only in judicial review of a final order under this section." § 1252(b)(9). The upshot is straightforward: Federal courts generally lack jurisdiction over all questions

of law and fact that arise from removal proceedings unless the court is reviewing "a final order" under § 1252(a)(1) or exercising jurisdiction "otherwise provided" in § 1252. § 1252(b)(9).

The zipper clause plainly covers CAT claims because CAT claims "aris[e] from" removal proceedings. *Ibid.*; see also *Nasrallah*, 590 U. S., at 585. It follows that federal courts lack jurisdiction to review CAT claims "unless they are reviewing 'a final order' under § 1252(a)(1) or exercising jurisdiction 'otherwise provided' in § 1252." *Jennings* v. *Rodriguez*, 583 U. S. 281, 316 (2018) (THOMAS, J., concurring in part and concurring in judgment). Section 1252 does not contain "a specific grant of jurisdiction over CAT claims." *Nasrallah*, 590 U. S., at 591–592 (THOMAS, J., dissenting). FARRA—not § 1252—"provides for judicial review of CAT claims." *Id.*, at 580 (majority opinion). Thus, on my reading of the relevant statutes, courts cannot review CAT claims unless they are reviewing a final order of removal.

II

Riley has never petitioned for judicial review of a final order of removal. See Brief for Petitioner 10–12. He petitioned the Fourth Circuit only for "review of the Order of the Board of Immigration Appeals . . . entered on May 31, 2022." 1 App. 42 (emphasis deleted). And, as the Court today holds, this May 31 order addressing Riley's CAT claim is not a final order of removal. *Ante*, at 267.

I do not see how the Fourth Circuit has jurisdiction to review a CAT order in isolation when the petitioner does not seek review of a final order of removal. Congress has provided that federal courts of appeals lack jurisdiction to review an order denying CAT relief "except *as part of* the review of a final order of removal." § 2242(d), 112 Stat. 2681–822 (emphasis added). "In other words, a final order of removal is required if a court is to review a CAT order at all." *Nasrallah*, 590 U. S., at 592 (THOMAS, J., dissenting).

Riley has undoubtedly received a final order of removal. But, he has never sought judicial review of that order pursuant to the procedures outlined in § 1252. This Court has held that "CAT orders may be reviewed *together with* final orders of removal in a court of appeals." *Id.*, at 581 (emphasis added). But, as far as I am aware, we have never held that judicial review of CAT orders is available when an alien does not petition for review of a final order of removal.

"[W]e can address jurisdictional issues in any order we choose." *Acheson Hotels, LLC* v. *Laufer*, 601 U. S. 1, 4 (2023); see also *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U. S. 574, 584 (1999) (there is no mandatory "sequencing of jurisdictional issues"). In this case, we decide only the issue on which we granted certiorari: the correctness of the Fourth Circuit's conclusion that it lacked jurisdiction based on the timing of Riley's petition for review. We do not decide whether Riley's case is otherwise free of jurisdictional defects.

On remand, the Fourth Circuit must assure itself of its jurisdiction before it can proceed to the merits of Riley's petition. See *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 101–102 (1998). I encourage the Fourth Circuit to consider whether it has jurisdiction to review a CAT order—and only a CAT order—when the petitioner does not seek review of a final order of removal.

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN and JUSTICE JACKSON join, and with whom JUSTICE GORSUCH joins as to all but Part IV, dissenting in part.

Sometimes, to ask a question is to answer it. When petitioner Pierre Riley received an order from the Department of Homeland Security notifying him it would seek to deport him to Jamaica, he timely sought deferral of that removal on the ground that he would likely be killed upon his return there. After initially winning such relief from an Immigration Judge, Riley lost before the Board of Immigration Ap-

peals.  The question is when Riley should have petitioned for judicial review of the Board's order.  Was his petition due 30 days after the Government first notified him he would be deported, well over a year before the Board issued the order Riley sought to challenge?  Or was it instead due 30 days after the order denying his claim for deferral of removal?  The answer is clear: One should not be required to appeal an order before it exists.

Incomprehensibly, the Court disagrees.  It acknowledges that the immigration laws required Riley to appeal the Department's decision that he was "deportable" together with the Board's (much later) order denying him relief from removal to Jamaica.  It admits that the only way to review both orders is to do so after the latter of the two issues.   Yet it concludes Riley's appeal was due before the Board issued the second order.  Because Congress did not write so incoherent a judicial-review provision, I respectfully dissent.*

## I

### A

Petitioner Pierre Riley grew up in Kingston, Jamaica.   In 1995, at age 16, he entered the United States on a visitor's visa to live with his father, a U. S. citizen.   Riley overstayed his visa, because (he says) he thought his father had arranged for his naturalization.  Eventually, Riley got involved in marijuana trafficking, and in 2008, a federal jury convicted him of conspiring to distribute marijuana and possessing a firearm in furtherance of that conspiracy.  For those offenses, a Federal District Court sentenced him to 25 years' imprisonment.

In January of 2021, after serving nearly 15 years of his sentence, Riley moved for compassionate release, arguing that his Type 2 diabetes and the COVID–19 pandemic consti-

---

*The majority correctly holds that the deadlines in this case are not jurisdictional, *ante*, at 272–277, so I join Part II–B of its opinion.

SOTOMAYOR, J., dissenting in part

tuted extraordinary and compelling reasons justifying his release.   The District Court agreed.

A few days later, the Department of Homeland Security served Riley with notice that it would seek to remove him from the United States.   Because Riley had been convicted of an aggravated felony, the Government could pursue his removal "without a hearing before an immigration judge." 8 CFR § 238.1(b)(2)(i) (2024); 8 U. S. C. § 1228(c).   Instead, after providing Riley an opportunity to contest his removability in writing, an immigration officer simply issued a "Final Administrative Removal Order," finding him "deportable" and ordering him "removed from the United States t[o] Jamaica."   1 App. 7–8.   Riley received this removal order on January 28, 2021.

B

The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), Art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U. N. T. S. 113, categorically prohibits signatory states from returning any person "to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture."   The United States has been a party to the Convention since 1994, and federal statutes and regulations implement its requirements.   See *ante,* at 265; 8 CFR § 208.16(c).   "A conviction of an aggravated felony has no effect on CAT eligibility" and "the Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility."   *Moncrieffe* v. *Holder,* 569 U. S. 184, 188, n. 1 (2013).   That is why even noncitizens like Riley, who are statutorily ineligible for administrative hearings on removability, are nonetheless entitled to a hearing before an immigration judge if they express a credible fear of torture in their country of removal.   Such hearings are known as withholding-only or CAT proceedings, and their result can be appealed to the Board of Immigration Appeals.   8 CFR § 208.31(e).

After receiving his removal order, Riley told an asylum officer that a powerful drug dealer affiliated with the Jamaican Government had been targeting his family and had murdered two of his cousins. 2 App. 66. Riley feared that he, too, would be killed upon his return to Jamaica. The officer found Riley "credible," but nonetheless concluded he was ineligible for CAT relief. *Id.*, at 59.

At a subsequent hearing before an Immigration Judge, Riley again testified that he feared removal to Jamaica. Riley explained that, following his compassionate release, "a big drug kingpin" who functioned as a major political leader in his Kingston neighborhood and was "tied in with all facets of law enforcement" had threatened repeatedly to kill him. Administrative Record in *Riley* v. *Garland*, No. 22–1609 (CA4), p. 194; see *id.*, at 204–207. In 2008, Riley said, the same kingpin had ordered the killing of his cousin, Oneil Spencer, after Spencer stopped "donat[ing]" money "to fund political campaigns and pay off government officials." *Id.*, at 201. When another cousin, Darrel Scott, was deported from the United States to Jamaica two years later and urged the local police to investigate Spencer's murder, he too was shot and killed. *Id.*, at 203–204.

After Riley's release made the Jamaican news, his mother, sister, and brother each began receiving a constant stream of death threats directed at Riley. *Id.*, at 207–209, 280–289. His mother reported the threats to the police, but (Riley testified) she was told that "the reason why your son is getting threats is because it's payback," that Riley was a "criminal," and that he would have to "pay for protection." *Id.*, at 208. Riley also explained that he could not evade these threats by moving elsewhere in Jamaica. As a deportee with a criminal record, Riley would be required under Jamaican law to register his address upon his return, meaning he would be easily located.

Along with his CAT application for deferral of his removal to Jamaica, Riley submitted letters from his mother, sister,

brother, and stepfather corroborating his testimony. See *id.*, at 280–289. Riley also submitted Spencer's death certificate, which lists "multiple gunshot wounds" as the cause of death. *Id.*, at 292.

The Immigration Judge found Riley's testimony credible, concluded that he was more likely than not to face torture or death upon his return to Jamaica, and granted CAT deferral of removal.

C

The Department of Homeland Security appealed the Immigration Judge's deferral order to the Board of Immigration Appeals. The Board discerned "no clear error in the Immigration Judge's credibility determination." 1 App. 47. Nevertheless, it concluded that Riley's claim was "based on the stringing together of a series of suppositions." *Id.*, at 50. Accordingly, the Board once again ordered Riley removed to Jamaica. The Board filed its order on May 31, 2022, 16 months after the first administrative removal order. Three days after the Board denied relief, Riley petitioned the Fourth Circuit for review.

On its own motion, the Fourth Circuit dismissed Riley's appeal for lack of jurisdiction. The court recognized that an order "denying CAT relief is reviewable 'as part of the review of a final order of removal.'" *Riley* v. *Garland*, 2024 WL 1826979, *2 (Apr. 26, 2024) (*per curiam*) (quoting *Nasrallah* v. *Barr*, 590 U. S. 573, 582 (2020)). By statute, noncitizens must file their "petition[s] for review" of such final removal orders "not later than 30 days," 8 U. S. C. § 1252(b)(1), a deadline the Fourth Circuit believed to be "'jurisdictional and . . . not subject to equitable tolling,'" 2024 WL 1826979, *1. The court concluded this 30-day window began to run on the date the original order of removal issued in January 2021, regardless of whether the associated CAT proceedings had concluded. By that logic, Riley would have been required to file his appeal of both the January 2021 final order of removal and the Board's May 2022 order denying CAT

relief in February of 2021. Because he did not, the Fourth Circuit dismissed the appeal. *Ibid.*

## II

Should Riley have appealed the Board's order denying deferral of removal before the Board issued it? The answer ought to be easy. Yet the majority today renders the statute incoherent, holding that Riley should have appealed the order one year and three months before the Board entered it.

According to the majority, "statutory text and our prior precedents" require this absurd result. *Ante*, at 272. Our Nation's immigration laws may be complex, but the irrational scheme the Court endorses today is a product entirely of its own creation. Statutory text and precedent overwhelmingly confirm what common sense tells us: Riley's appeal was timely.

## A

Although the majority purports to be bound by the statute, its cursory analysis elides all but one of the relevant provisions. *Ante*, at 267. Background on the statutory scheme is accordingly necessary to understanding why the question in this case arises.

Early versions of the Immigration and Nationality Act granted the courts of appeals exclusive jurisdiction to review "all final orders of deportation," Act of Sept. 26, 1961, §5(a), 75 Stat. 651, an undefined term this Court interpreted to include "order[s] denying suspension of deportation," *Foti* v. *INS*, 375 U. S. 217, 222 (1963). Under that framework, a noncitizen who received an order denying relief from removal (such as the Board's order denying Riley's CAT claim) could have appealed it as a standalone order of deportation, regardless of whether a prior order had resolved the issue of removability. Cf. *Cheng Fan Kwok* v. *INS*, 392 U. S. 206, 211 (1968) (allowing separate petitions for review of "denials of discretionary relief" following an initial removal order).

A number of amendments intended to streamline the immigration laws changed that analysis. See *Kolov* v. *Garland*, 78 F. 4th 911, 922–924 (CA6 2023) (Murphy, J., concurring) (describing these developments). Specifically, Congress " 'consolidate[d] judicial review of immigration proceedings into one action in the court of appeals.' " *Guerrero-Lasprilla* v. *Barr*, 589 U. S. 221, 230 (2020) (quoting *INS* v. *St. Cyr*, 533 U. S. 289, 313 (2001)). It did so by enacting the so-called zipper clause, *ibid.*, which channels judicial review of all claims "arising from any action taken or proceeding brought to remove an alien from the United States" into a single appeal: the appeal of a "final order [of removal]," 8 U. S. C. § 1252(b)(9); see also § 1252(a)(1). The zipper clause does not change the substance of what noncitizens may appeal. *Monsalvo Velázquez* v. *Bondi*, 604 U. S. 712, 724, and n. 1 (2025). Rather, it ensures that "a noncitizen's various challenges arising from the removal proceeding" are " 'consolidated in a petition for review and considered by the courts of appeals.' " *Nasrallah*, 590 U. S., at 580.

"Importantly," the Foreign Affairs Reform and Restructuring Act of 1998 expressly "provides for judicial review of CAT claims." *Id.*, at 580. Thus, noncitizens (including those whose opportunities for judicial review are otherwise limited on account of criminal convictions) can obtain judicial review of orders denying CAT relief. *Id.*, at 580–581. Because such challenges "aris[e]" out of the removal proceedings, however, the zipper clause applies to them. § 1252(b)(9). And the zipper clause would not achieve its goal, of "[c]onsolidat[ing]" the relevant appeals, *ibid.*, if noncitizens had to appeal each issue separately. That is why, as the Act directs, "a petition for review filed with an appropriate court of appeals in accordance with" the statute governing final orders of removal "shall be the sole and exclusive means for judicial review of any cause or claim under the

[CAT].” §1252(a)(4). A petition for review under §1252, in turn, “must be filed not later than 30 days after the date of the final order of removal.” §1252(b)(1).

All this explains why, though Riley seeks to appeal the denial of CAT relief and not the finding that he is removable, the appellate deadline in his case nonetheless depends on identifying the “order of removal” and determining when it became “final.” *Ibid.*

An “order of removal” is the same as an “ ‘order of deportation.’ ” *Nasrallah*, 590 U. S., at 579, 584. Along with the other 1990s amendments, Congress enacted a statutory definition of that term, defining it as the order “concluding that the alien is deportable or ordering deportation.” §1101(a)(47)(A). Subsequently, this Court held that a CAT order “is not itself a final order of removal” as defined in the statute. *Id.*, at 582. In light of that holding, the majority correctly identifies the relevant “order of removal” as the January 2021 administrative order holding Riley removable. The only question, then, is when that order became final for purposes of the 30-day appeal window.

B

Riley’s order of removal did not became final, for purposes of appeal, until the Board issued its order denying CAT relief. Congress expressly provided for judicial review of “any cause or claim” under CAT. §1252(a)(4). Self-evidently, such review “cannot take place until the [Board] has denied . . . relief.” *Ante*, at 271. Meanwhile, Congress directed that CAT orders must be appealed alongside the underlying order of removal. The only way to adhere to both instructions is to hold that removal orders do not become final until withholding-only proceedings are complete. Centuries of precedent on finality confirm that conclusion.

1

Immigration laws define finality, but only with respect to orders of removal subject to direct Board review. Congress

provided that orders of removal "shall become final upon the earlier of . . . (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." § 1101(a)(47)(B). Sensibly, then, the statute ties finality to the close of the relevant agency proceedings.

In the mine run of cases, an immigration judge hears claims about removability together with claims about protection from or deferral of removal (such as CAT claims) in a single proceeding, which ends in a consolidated appeal to the Board. The finality provision makes clear that, in those cases, the underlying removal order becomes final once the Board has concluded its review.

Expedited removal orders like the one issued in Riley's case, however, are not subject to Board review at all. § 1228(b). Rather, a noncitizen subject to expedited removal can appeal only a withholding claim to the Board, and not the removal order itself. By its plain terms, the statute's finality provision does not apply to such removal orders. That is because, in such cases, there will never be "a determination by the Board" affirming the removal order, nor is there any "period in which the alien is permitted to seek review" of it. § 1101(a)(47)(B). Thus, the statutory definition alone does not resolve this case.

The majority claims the statutory definition renders the order of removal final immediately upon its issuance. That is so, the majority says, because when a removal order is not appealable, "the period to seek review [of it] 'expir[es]' as soon as the [order] is issued." *Ante*, at 267. In other words, the majority treats a nonexistent appeals period as if it were merely an infinitesimally short period, one so short as to "expir[e]" instantaneously.

That makes no sense. "Expiration," after all, means the "conclusion [or] termination of a limited time." See Webster's New Twentieth Century Dictionary 645 (2d ed. 1979);

Black's Law Dictionary 579 (6th ed. 1990) ("Cessation; termination from mere lapse of time, as the expiration date of a lease, insurance policy, statute, and the like"); Black's Law Dictionary 722 (12th ed. 2024) ("The ending of a fixed period of time").   A period of time cannot "expire" if it never begins in the first place.   For example, a statute fining those who apply for a driver's license after "the expiration of the period" for which they hold the license plainly would not apply to a first-time applicant.   As to that applicant, there is no "period" (much less a limited or fixed one) that could "expir[e]."   8 U. S. C. §1101(a)(47)(B)(ii).   So too here.

The majority gives no argument for reaching the opposite conclusion.   It stands alone, moreover, in asserting that a "straightforward reading of the statutory text" resolves this case.   *Ante,* at 267.   Even the courts of appeals that have attempted to defend the majority's position admit that "[t]he definition of finality in §1101(a)(47)(B) does not squarely apply" to expedited orders of removal because noncitizens "may not appeal [those] decision[s] to the BIA (or even to an immigration judge)."   *Bhaktibhai-Patel* v. *Garland,* 32 F. 4th 180, 192 (CA2 2022); *Martinez* v. *Garland,* 86 F. 4th 561, 568 (CA4 2023) ("An alien cannot appeal an immigration officer's reinstatement decision to the Board, so at first blush this definition appears inapposite").

2

Absent an unambiguous answer in the statute's definition of finality, the Court should turn to tools of statutory construction: the "'ordinary or natural' meaning" of the term "final," *Leocal* v. *Ashcroft,* 543 U. S. 1, 9 (2004), "'"the legal tradition and meaning of centuries of practice"'" associated with finality, *Lackey* v. *Stinnie,* 604 U. S. 192, 200 (2025), and the relevant provisions' "'place in the overall statutory scheme,'" *West Virginia* v. *EPA,* 597 U. S. 697, 721 (2022).

Beginning with the ordinary meaning of "final," this Court has previously recognized that term "clearly denotes some

kind of terminal event." *Smith* v. *Berryhill*, 587 U. S. 471, 479 (2019). Thus, an order becomes "final" when it "'leav[es] nothing to be looked for or expected,'" when it "'leav[es] no further chance for action, discussion, or change.'" *Ibid.*, and n. 8 (quoting 5 Oxford English Dictionary 920 (2d ed. 1989) and Webster's New World College Dictionary 542 (5th ed. 2016)).

Of course, an order can be terminal in one sense and not another. Consider a conviction. Once a jury delivers, and the court enters, a guilty verdict, nothing remains "to be looked for or expected" from that court with respect to the conviction. In that sense, a conviction is as final as its gets. Nevertheless, "appellate review" is prohibited "until conviction and imposition of sentence." *Flanagan* v. *United States*, 465 U. S. 259, 263 (1984). So for purposes of appeal, a conviction remains nonfinal until sentencing is complete as well. Yet another rule of finality applies to the availability of collateral review. See *Jimenez* v. *Quarterman*, 555 U. S. 113, 119 (2009) (noting that, under 28 U. S. C. §2244(d)(1)(A), a state-court conviction is not final for purposes of federal collateral review until the end of direct review or of the time for seeking such review).

This multiplicity of finality rules makes clear that it is not enough to muse about finality in the abstract. Rather, the Court must focus on the specific sense of finality relevant here, which (all agree) is finality for purposes of appeal. Because "'[f]inality as a condition of review is an historic characteristic of federal appellate procedure,'" *Flanagan*, 465 U. S., at 263, centuries of precedent and practice inform that analysis.

As a general matter, an order is final for purposes of appeal "when the district court disassociates itself from the case, leaving nothing to be done at the court of first instance save execution of the judgment." *Clay* v. *United States*, 537 U. S. 522, 527 (2003). That understanding of finality serves one central purpose: preventing piecemeal litigation. As

this Court put it long ago, "[f]rom the very foundation of our
judicial system," rules of finality have ensured that "the
whole case and every matter in controversy in it" is "decided
in a single appeal." *McLish* v. *Roff*, 141 U. S. 661, 665–666
(1891). That is why this Court's finality jurisprudence is
grounded "not in merely technical conceptions of 'finality,'"
but rather in the policy "against piecemeal litigation." *Cat-
lin* v. *United States*, 324 U. S. 229, 233–234 (1945).

The reason for that focus is simple: The only way to ensure
that orders are appealed together is to have them become
final together as well. Otherwise, an expiring deadline on
an earlier order (say, a conviction) would force individuals to
appeal that order before the remaining issues in the case
(say, a criminal sentence) have been resolved. So when two
orders must be consolidated into the same appeal, it follows
inescapably that they become final together, as well.
Whether a ruling is final for purposes of appeal therefore
depends principally on whether that ruling can, consistent
with the policy against piecemeal review, be appealed inde-
pendently. See *Gillespie* v. *United States Steel Corp.*, 379
U. S. 148, 152–153 (1964) (collecting cases).

An example illustrates the point. Sometimes, a dispute
over an award of attorney's fees follows the conclusion of
litigation on the merits. At present, "[t]here is no question
that awards of attorney's fees may be appealed separately as
final orders after a final determination of liability on the mer-
its." *García-Goyco* v. *Law Environmental Consultants,
Inc.*, 428 F. 3d 14, 18 (CA1 2005). Thus, for example, when
a party loses a civil case at trial, it may appeal the jury
verdict before the fee litigation has concluded. See *Sprague*
v. *Ticonic Nat. Bank*, 307 U. S. 161, 168–169 (1939). Be-
cause separate appeals are permitted, the finality of the mer-
its judgment does not depend on the status of the attorney's
fees dispute.

Suppose, now, that Congress passed a law providing that
an appeal from final judgment "shall be the sole and exclu-

sive means for judicial review of" an order awarding attorney's fees.   Cf. 8 U. S. C. § 1252(a)(4).   That law should have the effect of overruling the courts' present assessment that such orders are best appealed separately.   Courts would undoubtedly recognize that merits judgments could no longer become final while fee litigation remained pending, because a statute now directs otherwise.   The perceived need for separate appealability was, after all, the basis for the prior finality rule.   Keeping the old finality rule in place in the face of the hypothetical statute, moreover, would force litigants to choose between appealing the merits judgment on time, thus forgoing their appeal of any eventual fee award, or filing their only appeal late.   No court would adopt such a scheme.

Yet that is precisely what the Court does today with respect to appeals from CAT orders.   Recall that withholding-only decisions (which now include CAT orders) once were independently appealable as orders of deportation.   See *supra,* at 286.   Congress then enacted § 1252(a)(4), which says that "a petition for review" under the section governing final orders of removal "shall be the sole and exclusive means for judicial review of any cause or claim under the [CAT]."   In other words, Congress directed that appeals from orders of removal and CAT orders be " 'consolidated in a [single] petition for review.' "   *Nasrallah,* 590 U. S., at 580.   That should only mean one thing.   Because a statute ties appeals of the CAT order to appeals of the removal order, their finality should be tied together, too.   Accordingly, the order of removal in this case should become final, for purposes of appeal, only after the Board issued its order denying CAT relief.

3

That the majority nonetheless adopts the opposite position, contrary to every one of this Court's finality precedents, might suggest there is reason to doubt that CAT orders are appealable at all.   Yet statutory text and this Court's prece-

dent are crystal clear on this point: Congress provided for judicial review of CAT claims.

Section 1252(a)(4) provides that "a petition for review" under that section "shall be the sole and exclusive means for judicial review of any cause or claim under the [CAT]." No "exclusive means" for review would be possible if review were unavailable. That is why this Court held in *Nasrallah* that "a noncitizen may obtain judicial review of . . . CAT orders," 590 U. S., at 583, even as the dissent complained that the Court wrongly "view[ed] § 1252(a)(4) as a specific grant of jurisdiction over CAT claims." *Id.*, at 591 (THOMAS, J., dissenting).

Perhaps the idea is that noncitizens may seek judicial review of their CAT claims only if, by luck or happenstance, they also have a challenge to the underlying order of removal. The majority's finality rule, however, prevents CAT appeals even under those circumstances. After all, courts will likely finish reviewing the removal order before the Board ever hears the associated CAT claim. Section 1252(a)(4) also does not direct courts to limit review of CAT claims in this way; it simply requires that review of the two kinds of orders be consolidated. Nor would this reading make any sense. Consider its effect on the attorney's fees hypothetical, where that reading would mean litigants could appeal a fee award only if, by luck or happenstance, they also had a meritorious challenge to the unrelated merits judgment.

Importantly, this Court rejected a nearly identical argument about § 1252 just months ago. In *Monsalvo Velázquez*, the Government argued that noncitizens seeking judicial review of questions arising out of their orders of removal could do so only by challenging their removability. 604 U. S., at 721–722; see also *id.*, at 760 (BARRETT, J., dissenting) ("[J]udicial review is available under § 1252(a)(1) only if there is a challenge to a 'final order of removal'"). This Court held that, "[i]nstead, § 1252 authorizes courts to review 'final

order[s] of removal' *and* address 'questions of law . . . arising from' them.'"   *Id.*, at 722 (quoting §§ 1252(a)(1), (b)(9); emphasis added).   *Nasrallah*, the zipper clause, and § 1252(a)(4) each make clear that questions about one's eligibility for CAT relief are questions "arising from" the order of removal. Thus, "§ 1252 authorizes courts to review" such questions. 604 U. S., at 722.

Under the "'well-settled' and 'strong presumption'" favoring judicial review, "when a statutory provision 'is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'"   *Guerrero-Lasprilla*, 589 U. S., at 229.   "The presumption can only be overcome by 'clear and convincing evidence' of congressional intent to preclude judicial review."   *Ibid.*; see also *Bowen* v. *Michigan Academy of Family Physicians*, 476 U. S. 667, 670 (1986) ("'[J]udicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress'" (quoting *Abbott Laboratories* v. *Gardner*, 387 U. S. 136, 140 (1967))).   It is hard to imagine any plausible reading of § 1252(a)(4) on which it cuts off judicial review of CAT claims (either completely or in the arbitrary sense rejected in *Monsalvo Velázquez*), much less a "'clear and convincing'" one.   *Guerrero-Lasprilla*, 589 U. S., at 229; see also *Parrish* v. *United States*, 605 U. S. 376, 384 (2025) (reiterating this Court's consistent holdings "that 'decisions on the merits' ought not be 'avoided on the basis of . . . mere technicalities'" (quoting *Foman* v. *Davis*, 371 U. S. 178, 181 (1962))).

The majority, perhaps aware of precedent's constrains, does not dispute any of this.   It acknowledges, as it must, that CAT claims are reviewable.   *Ante*, at 271–272.   Yet once the majority accepts that premise, it is left with no way to justify its construction of the judicial-review provision as requiring petitions for review to be filed well before the rele-

vant CAT orders are issued. If judicial review is available, then it must be available after the relevant order is issued and not before. And if review is available after the relevant orders issue, then there is no conceivable reason to require applicants to file their petitions beforehand.

## III

### A

Besides its halfhearted attempt to invoke the inapplicable statutory definition, the majority offers a single thought about the dispositive issue of finality. The original order, it says, "was . . . the Executive's *final* determination on the question of removal," so it "constituted 'the final order of removal' in this case." *Ante,* at 267. The implication is that, because this order was a "*final* determination," *ibid.,* it became final the moment it was issued.

This argument conflates two different questions: when the agency made its final decision on the question of removability, and when the "order of removal" became final for appellate purposes. This Court explained just months ago that "a finding of 'removability' " is only "one term in a final order of removal." *Monsalvo Velázquez,* 604 U. S., at 722. That the agency's removability finding is final therefore does not mean that the order containing it is final for purposes of appeal.

The majority's skewed reasoning betrays a fundamental misunderstanding of the final-judgment principle. Every interlocutory order finally determines the limited question it decides, but of course that does not mean every order becomes instantly final for purposes of appeal. When a district court declines to certify an expert witness, that is its final word on the matter, yet the order remains nonfinal for purposes of appeal until the entire case has been litigated to judgment. When a district court disqualifies a litigant's counsel, that order is the court's "*final* determination on the question" of disqualification, *ante,* at 267; counsel could not

show up to trial again the next day. Yet the order remains nonfinal for purposes of appeal until the underlying case is over. See *Richardson-Merrell Inc.* v. *Koller*, 472 U. S. 424, 430 (1985); *Flanagan*, 465 U. S., at 263. Few decisions, moreover, are more final than a guilty verdict, yet a conviction remains nonfinal for purposes of appeal until the district court has pronounced a sentence. See *supra*, at 291.

In failing to recognize as much, the majority breaks with basic principles of finality and appellate review, holding (seemingly for the first time) that two orders that statutorily must be appealed together nonetheless do not become final together. Inexplicably, the majority admits that "review of removability and withholding of removal should occur in a single appellate proceeding," and that "review of the denial of CAT relief cannot take place until the [Board] has denied such relief." *Ante*, at 271. Yet it refuses to accept the inevitable conclusion: If the orders must be reviewed "in a single appellate proceeding," *ibid.*, then they become final for purposes of appeal together as well. The result: Noncitizens facing expedited removal will be forced to file immediate appeals of their removal orders in every case, simply to protect their right to judicial review in the event they lose their ongoing withholding-only proceedings.

Across a wide variety of statutory contexts, courts have recognized that protective appeals are "procedural hoops" that "serve no function." *West Penn Power Co.* v. *EPA*, 860 F. 2d 581, 585, 586 (CA3 1988) (explaining, in Clean Air Act case, the need "to avoid a de facto requirement of protective appeals"); *Outland* v. *CAB*, 284 F. 2d 224, 227–228 (CADC 1960) (declining to read the Administrative Procedure Act to require protective appeals while reconsideration is pending); *Newark, New Castle and Seaford, Del.* v. *FERC*, 763 F. 2d 533, 544–545 (CA3 1985) (same, in Federal Power Act case); *Rosler* v. *Derwinski*, 1 Vet. App. 241, 245–246 (1991) (explaining, in Veterans' Judicial Review Act case, that reading protective appeal requirement into statute "would . . . pose

a substantial administrative problem" and cause "many" claimants to "lose their right to judicial review"). Protective appeal requirements "set a trap for the unwary, who, if they are not intimately familiar with the intricacies of the finality doctrine, may inadvertently lose their right to judicial review." *West Penn Power Co.*, 860 F. 2d, at 585.

For that reason, too, this Court has rejected statutory readings that would result in similar protective-appeal requirements, even in the face of seemingly contrary textual commands. Consider § 704 of the Administrative Procedure Act, which provides: "Except as otherwise expressly required by statute, agency action otherwise final is final for purposes of this section whether or not there has been presented or determined an application . . . for any form of reconsideration." 5 U. S. C. § 704. Taken literally, "[t]his would seem to mean that the pendency of reconsideration motions does not render [agency] orders nonfinal for purposes of triggering the Hobbs Act limitations period." *ICC* v. *Locomotive Engineers*, 482 U. S. 270, 284 (1987). Yet "[t]hat language has long been construed by this and other courts merely to relieve parties from the *requirement* of petitioning for rehearing before seeking judicial review . . . but not to prevent petitions for reconsideration that are actually filed from rendering the orders under reconsideration nonfinal." *Id.*, at 284–285; see also *American Farm Lines* v. *Black Ball Freight Service*, 397 U. S. 532, 541 (1970). By contrast, in *Stone* v. *INS*, 514 U. S. 386 (1995), we held that motions to reopen orders of removal did not render nonfinal the underlying removal order, precisely because petitioners "[c]ould file a separate petition to review that second final [reconsideration] order." *Id.*, at 395.

More recently, this Court has twice refused to read a protective-appeal requirement into § 1252. In *Santos-Zacaria* v. *Garland*, 598 U. S. 411 (2023), the Government advanced a reading of that section that would "flood the Board with reconsideration motions that noncitizens other-

wise would not file" and "flood the courts with pointless pre-mature petitions," filed simply to preserve the right to review. *Id.*, at 429. This Court declined to "render the statutory scheme incoherent" in that way. *Id.*, at 428. And earlier this year, the Government argued that, under the zip-per clause, noncitizens could challenge the terms of their removal order only if they "press[ed] a challenge to [the] finding of 'removability.'" *Monsalvo Velázquez,* 604 U. S., at 722. This Court rejected that argument, too, noting it would have put noncitizens to the choice of "either adorn-[ing] their judicial petitions with a pointless challenge . . . or forfeit[ing] the right to review altogether." *Ibid.* Mere months later the Court seems to have forgotten all these lessons.

B

The Court overlooks *Santos-Zacaria*, *Monsalvo Veláz-quez*, and the wealth of precedent on finality, claiming in-stead that two other cases are "instructive" and require a different outcome here. *Ante*, at 268. Neither case sup-ports the majority's conclusion.

First, the majority points to *Nasrallah*'s holding that "a CAT order is not a final order of removal," does not disturb or affect the validity of a final order of removal, and does not merge into such an order. *Ante*, at 268. The majority does not explain, however, why this holding supports its conclu-sion. An order need not "'affect the validity'" of a decision (or merge into it) to impact its finality for purposes of appeal. *Ibid.* As noted, a sentence does not affect the validity of a conviction (and the two do not "merge"), yet a conviction cannot be final for purposes of appeal until the sentence is final as well. Notably, *Nasrallah* itself compared the rela-tionship between removal and CAT orders to that between a criminal conviction and sentence. 590 U. S., at 583. *Nas-rallah* is therefore hardly dispositive here.

In any event, it should be clear by now that the majority's discussion of *Nasrallah* misses the point. Whether CAT or-

ders disturb or affect the substance of removal orders would certainly be relevant if the Court conducted its finality analysis without guidance from Congress, as it did in the case of fee awards. See *Trustees* v. *Greenough*, 105 U. S. 527, 531 (1882) (fee orders are "so far independent" of the merits "as to make the decision substantially a final decree for the purposes of an appeal"). But here, Congress dictated that the two orders must be consolidated for purposes of appeal. 8 U. S. C. § 1252(a)(4). The Court is required to respect that decision and move on.

The majority next points to *Johnson* v. *Guzman Chavez*, 594 U. S. 523 (2021), as supporting its conclusion. *Ante*, at 269. That case concerned the 90-day removal period following an order of removal, during which the Government is required to detain noncitizens. See § 1231(a)(2). The point of such detention is to provide the Government with a reasonable period of time to "secure [the noncitizen's] removal." *Zadvydas* v. *Davis*, 533 U. S. 678, 699 (2001). The removal period does not begin, Congress has specified, until the removal order is "administratively final." § 1231(a)(1)(B)(i). The question was whether ongoing withholding-only proceedings prevented a removal order from being administratively final for purposes of the mandatory detention period.

This Court held that the administrative finality of an order of removal "does not depend in any way on the outcome of the withholding-only proceedings." *Guzman Chavez*, 594 U. S., at 539. Thus, the detention period begins after the agency has finalized its removability finding, not after further proceedings over the specific country of removal have concluded. *Id.*, at 534–535. Yet whether an order is "administratively final" for purposes of detention and whether it is "final" for purposes of appeal are two entirely different questions. "Finality is variously defined; like many legal terms, its precise meaning depends on context." *Clay*, 537 U. S., at 527. That is why this Court recognized in *Guzman*

*Chavez* that §1252 "uses different language than §1231 and relates to judicial review of removal orders rather than detention." 594 U. S., at 535, n. 6. The Court thus "express[ed] no view on" the question of finality for purposes of appeal. *Ibid.*

Nor is it at all surprising that "administratively final" in §1231 and "final" in §1252 should have different meanings. "In a given statute, the same term usually has the same meaning and different terms usually have different meanings." *Pulsifer* v. *United States*, 601 U. S. 124, 149 (2024). Because the point of detention is to ensure that a noncitizen does not flee pending his deportation, moreover, arguably all that matters for purposes of the detention statute is that the noncitizen is removable from the United States, not whether he is removable to any particular country. *Guzman Chavez*, 594 U. S., at 536, 539. There is "no reason to import the understanding of finality that applies" to detention into the separate "field" of appellate review. *Waetzig* v. *Halliburton Energy Services, Inc.*, 604 U. S. 305, 315 (2025) (majority opinion of ALITO, J.) (discussing the different "role[s]" of finality across contexts). Indeed, precisely the same two senses of finality apply to criminal convictions. A conviction becomes final for purposes of presentencing detention once the jury has delivered its verdict. 18 U. S. C. §3143(a). Yet it does not become final for purposes of appeal until the district court has imposed a sentence.

The majority claims to "appreciate th[e] difference" between the two sorts of finality. *Ante,* at 271. But, the majority explains, "the meaning of finality" is not "necessarily" different, even when Congress uses different words to serve different purposes. *Ibid.* That truism hardly helps. The majority gives up shortly afterward, simply asserting by *ipse dixit* that the differences do not matter here. In light of 8 U. S. C. §1252(a)(4) and our finality precedents, they clearly should.

IV

Today's holding deals untold damage to basic principles of finality and judicial review. Time will tell whether the Court will extend its illogic beyond politically disfavored noncitizens. Cf. *McLaughlin Chiropractic Associates, Inc.* v. *McKesson Corp.*, 604 U. S. 146, 158, n. 5 (2025) (recognizing "unfairness . . . potentially ris[ing] to the level of a constitutional due process problem," of rule that would require regulated businesses to seek judicial review before the applicability of an agency order to them was "reasonably foreseeable").

As it stands, the chaos the majority causes to our system of immigration appeals is considerable. The effects on noncitizens subject to expedited removal proceedings should by now be clear enough. The majority suggests a number of workarounds for that chaos, including by allowing protective appeals and notice about the need to file such appeals long before CAT proceedings have concluded. See *ante,* at 271–272. To be clear, the Government is obligated by the Fifth Amendment's Due Process Clause to provide noncitizens with adequate notice about the need for an immediate appeal to preserve the right to judicial review of CAT claims. See *A. A. R. P.* v. *Trump*, 605 U. S. 91, 94 (2025) (*per curiam*) ("'[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings'" (quoting *Trump* v. *J. G. G.*, 604 U. S. 670, 673 (2025) (*per curiam*); alteration in original)). That guarantee includes "notice that is 'reasonably calculated, under all the circumstances,'" to enable "'interested parties'" to "pursue appropriate relief." *A. A. R. P.*, 605 U. S., at 94–95 (quoting *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, 314 (1950)). So too, courts of appeals should not arbitrarily decline to hold in abeyance any premature appeals of yet-to-be-decided withholding claims. See *ante,* at 271–272.

In addition, the courts of appeals should consider applying standard principles of equitable tolling, which are likely available now that the Court has recognized that

§ 1252(b)(1)'s appeal deadline is not jurisdictional.   See *ante*, at 272–277.

Today's decision may have consequences beyond expedited removal proceedings, too.   Recall that, in the typical case, an immigration judge decides all questions related to both removal and withholding in the same proceeding.   See *supra*, at 289.   The Board of Immigration Appeals then reviews all aspects of the immigration judge's decision.   As things stand today, the noncitizen may petition for review of the Board's decision once agency review has completed.   See *ibid.*; § 1101(a)(47)(B).   Yet what if the Board affirms "an immigration judge's removability finding but remand[s] for further consideration of withholding claims"?   *Kolov*, 78 F. 4th, at 927 (Murphy, J., concurring).   Would the majority hold as well that such findings become final before the remand is concluded, requiring noncitizens to file premature protective appeals whenever a CAT claim is remanded?   As with so much else, the majority does not say.   To avoid further chaos, the Board would be well counseled to remand cases in their entirety.

Finally, lest one think today's decision will at least allow the Government to conduct its immigration policies more cheaply or efficiently, even that is not the case.   It is not by accident that the Government, across the past and present administration, stands firmly with Riley here, even as it rarely fails to press colorable jurisdictional objections.   See *Diamond Alternative Energy, LLC* v. *EPA*, 606 U. S. 100, 108 (2025).   As the Government knows, "[a] whole train of unnecessary consequences" follows from requiring noncitizens to appeal in every expedited removal case, simply to protect their eventual right to appeal future withholding-only decisions.   *Outland*, 284 F. 2d, at 228.   In each of these unnecessary appeals, "the Board and other parties may be called upon to respond and oppose the motion for review; when the Board acts, the petition for review must be amended to bring the petition up to date," or dismissed if

the Board grants the noncitizen's CAT claim. *Ibid.* All the while, courts must manage countless cases that otherwise might never have been opened. The Government recognizes all these consequences. Brief for Respondent 36–38. This Court is blind to them. Today's decision is the rare holding that benefits no one.

\* \* \*

Not long ago, this Court described delays in regulatory approvals of construction projects as "'borde[ring] on the Kafkaesque.'" *Seven County Infrastructure Coalition* v. *Eagle County*, 605 U. S. 168, 184 (2025). In holding that Riley was required to file his appeal 16 months before the order he sought to challenge existed, the Court surely moves from the border well into the heartland of illogic and absurdity. Respectfully, I dissent.

Page Proof Pending Publication

REPORTER'S NOTE

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

p. 266, line 8: "*Argueta-Herandez*" is changed to "*Argueta-Hernandez*"
p. 272, line 18: "the" is inserted before "Government"
p. 290, line 24: "the" is changed to "this"