**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 20-1762**

───────────

ZOILA BEATRIZ SORTO-GUZMAN; AXEL DAVID RIVAS-SORTO,

Petitioners,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

───────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────

Argued:  May 3, 2022                      Decided:  August 3, 2022

───────────

Before KING and WYNN, Circuit Judges, and FLOYD, Senior Circuit Judge.

───────────

Petition granted and remanded by published opinion.   Senior Judge Floyd wrote the opinion in which Judge King and Judge Wynn joined.

───────────

**ARGUED:**  Jeremy Layne McKinney, MCKINNEY IMMIGRATION LAW, Greensboro, North Carolina, for Petitioners.  Paul Fiorino, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Jeffrey B. Widdison, MCKINNEY IMMIGRATION LAW, Wilmington, North Carolina, for Petitioners. Jeffrey C. Bossert, Acting Assistant Attorney General, Carl H. McIntyre, Jr., Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────

FLOYD, Senior Circuit Judge:

Petitioners Zoila Sorto-Guzman and Axel Rivas-Sorto, a twenty-three-year-old mother and her seven-year-old son, respectively, seek asylum in the United States after fleeing El Salvador following death threats and violence at the hands of the Mara 18 gang due to Sorto-Guzman's Catholic religion. An immigration judge (IJ) found that Sorto-Guzman's testimony was credible and that one of the death threats she received had a nexus to her statutorily protected right to religion. However, the IJ then concluded that the death threat did not rise to the level of past persecution because the threat never came to fruition. It thus denied her application for asylum and the Board of Immigration Appeals (BIA) affirmed that decision.

We have repeatedly said, "the 'threat of death' qualifies as persecution." *Crespin-Valladares v. Holder*, 632 F.3d 117, 126 (4th Cir. 2011) (quoting *Li v. Gonzales*, 405 F.3d 171, 177 (4th Cir. 2005)). The IJ, and the BIA in adopting the opinion, erred in ignoring our clear precedent and instead implemented a higher burden than we require. We refuse to follow such a "fruition" test and instead apply our longstanding precedent. We hold Sorto-Guzman was entitled to the presumption that she has a well-founded fear of persecution. Thus, we grant the petition for review and remand to the BIA to determine whether the Department of Homeland Security (DHS) has carried its burden to rebut the presumption that Sorto-Guzman has a well-founded fear of persecution.

2

I.

Petitioners are citizens and nationals of El Salvador who both entered the United States on March 9, 2016, without authorization. Officials with U.S. Customs and Border Protection (CBP) detained Petitioners shortly after they entered the United States. When interviewed, Sorto-Guzman notified the CBP that she feared persecution based on her religion if she returned to El Salvador. Sorto-Guzman applied for asylum under 8 U.S.C. § 1158(a) on March 2, 2017. She included Rivas-Sorto as a derivative in her application.

Prior to fleeing to the United States, Petitioners lived in the La Unión Department of El Salvador in the municipality of Nueva Esparta.

Sorto-Guzman is a life-long Catholic who regularly attended Catholic services in El Salvador. In December 2015, about five members of the Mara 18 gang accosted Sorto-Guzman in the street as she was leaving church. At the time, she was wearing a crucifix medallion around her neck. The gang members tore the chain from her neck, hit and kicked her, and threatened to kill her if she ever wore it or attended church again. Sorto-Guzman stopped attending church after the attack, fearing the gang and their threats.

A few weeks later in January 2016, a group of Mara 18 gang members—including some of the gang members from the December 2015 assault—stopped Sorto-Guzman, along with her sister and Rivas-Sorto, as she was coming home from a shopping trip. One of the men attempted to sexually assault Sorto-Guzman and had started to forcefully kiss her. He only stopped when her screams caught the attention of a neighbor. The gang members threatened to kill Sorto-Guzman and Rivas-Sorto if Sorto-Guzman did not join the gang and start living with them.

3

On February 13, 2016, some of the gang members from the prior incidents tracked where Sorto-Guzman lived and broke into her house carrying guns. The gang members viciously beat Sorto-Guzman, threatened her life, and robbed her. Sorto-Guzman's neighbors called the police, but they did not come until several hours after the assault. Sorto-Guzman reported the assault and robbery to the officers who arrived at the scene. She also went to the local police station the next day to report the attack. The police made one attempt to investigate, but Petitioners were not home when the police arrived, and the officers never followed up. The day after, a gang member called Sorto-Guzman, warning her she would regret making the report to the police and that they would soon kill her, her son, and her sister.

On February 15, 2016, Sorto-Guzman, her sister, and Rivas-Sorto fled from El Salvador. They reached the United States on March 9, 2016. The CBP detained them that day. They were eventually placed in removal proceedings and released from detention.

On March 2, 2017, Sorto-Guzman applied for asylum under 8 U.S.C. § 1158(a), withholding of removal under 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture (CAT). On April 17, 2018, an IJ held a hearing to review Sorto-Guzman's application. At the conclusion of the hearing, the IJ issued an oral decision. The IJ found that Sorto-Guzman was a credible witness and awarded her testimony "full evidentiary weight." A.R. 56. The IJ then determined that there was a nexus between the incident in December 2015—during which the gang members assaulted Sorto-Guzman and threatened her life if she ever attended church or wore a crucifix necklace again—and the statutorily protected ground of religion.

4

However, when it came to the persecution requirement for asylum, the IJ held that "the physical mistreatment [in the December 2015 assault] even when considered along with the threat that never came to fruition simply does not rise to the level of persecution." A.R. 57. Instead, the IJ found it was a "one-time isolated incident." A.R. 57. The IJ further found that the other incidents that occurred in January and February 2016 had no connection to the December 2015 event and thus had no nexus to the statutorily protected ground of religion. On that basis, the IJ determined that Sorto-Guzman was not subjected to past persecution.

Next, the IJ reviewed Sorto-Guzman's well-founded fear of future persecution. The IJ reiterated his finding that the December 2015 assault was an isolated event. The IJ further noted that there were no additional threats or harm to Sorto-Guzman based on her religious beliefs after the first assault, making it "highly improbable" that she would be threatened with religious persecution if she returned to El Salvador. A.R. 60. The IJ thus denied Sorto-Guzman's application for asylum. The IJ then rejected Sorto-Guzman's request for withholding of removal without any analysis, citing *Mirisawo v. Holder*, 599 F.3d 391, 396 (4th Cir. 2010), in which this Court stated "an applicant who fails to meet the lower standard for showing eligibility for asylum will be unable to satisfy the higher standard for showing withholding of removal."

The IJ further denied relief under CAT after finding that the gang's past conduct did not amount to torture and that there was no indication she would be tortured in the future upon returning to El Salvador or that "the authorities in El Salvador would turn a blind eye and allow her to be tortured without some intervention by the Governmental authorities."

5

A.R. 61.  Without any other relief available to Sorto-Guzman or her son, the IJ ordered both Petitioners removed to El Salvador.

Petitioners timely appealed to the BIA on May 17, 2018.  In that appeal, they argued that the IJ's conclusions—that Sorto-Guzman was not subjected to past persecution and that she does not have a well-founded fear of persecution if returned to El Salvador—were in error.  On June 11, 2020, the BIA adopted and affirmed the IJ's decision.  The BIA agreed with the IJ and held that she was not entitled to asylum or withholding of removal.  In particular, the BIA held that Sorto-Guzman's first encounter with the gangs in December 2015 did not rise to the level of persecution and that the subsequent incidents did not have a nexus to her religion.  The BIA then found that the IJ's decision to deny relief under CAT was not erroneous because Sorto-Guzman had not demonstrated that the government had or would acquiesce or consent to any past harm or feared harm.

Petitioners timely filed a petition for review of the BIA's decision, asserting that the IJ and the BIA erred in denying Sorto-Guzman's asylum application on the basis of its finding that she had not proven she experienced past persecution.

## II.

Where, as here, the BIA adopts the IJ's opinion and supplements it with its own reasoning, we review both rulings.  *Barahona v. Holder*, 691 F.3d 349, 353 (4th Cir. 2012).  We are "obliged to uphold [the IJ and] the BIA's determinations unless they are 'manifestly contrary to the law and an abuse of discretion.'"  *Djadjou v. Holder*, 662 F.3d 265, 273 (4th Cir. 2011) (quoting *Lizama v. Holder*, 629 F.3d 440, 444 (4th Cir. 2011)).  The BIA

6

abuses its discretion "if it fail[s] to offer a reasoned explanation for its decision, or if it distort[s] or disregard[s] important aspects of the applicant's claim." *Id.* (alterations in original) (quoting *Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011)). The BIA also abuses its discretion when "making an error of law." *Menghesha v. Gonzales*, 450 F.3d 142, 147 (4th Cir. 2006) (citations omitted). We have held that whether the maltreatment a noncitizen suffers amounts to past persecution is a question of law. *See, e.g.*, *Bedoya v. Barr*, 981 F.3d 240, 246 (4th Cir. 2020); *Tairou v. Whitaker*, 909 F.3d 702, 707 (4th Cir. 2018). We review legal questions de novo, with "appropriate deference" to the IJ and the BIA's interpretations of the Immigration and Nationality Act (INA). *Id.* (citing *Nwolise v. INS*, 4 F.3d 306, 309 (4th Cir. 1993)).

The factual findings of the IJ and the BIA "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 146 (quoting 8 U.S.C. § 1252(b)(4)(B)).

III.

Sorto-Guzman argues on appeal that the IJ and the BIA erred in ruling that she did not experience past persecution on account of the statutorily protected ground of religion. We agree with Sorto-Guzman that the IJ and the BIA erred in not recognizing the credible death threat she experienced as sufficient to establish past persecution under our precedents.

To be eligible for asylum, an applicant must show she is a "refugee" as defined by the INA. 8 U.S.C. § 1158(b)(1)(A). The INA, as relevant here, defines a "refugee" as a

7

person outside the country of her nationality "who is unable or unwilling to return to, and is unable or unwilling to avail . . . herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." § 1101(a)(42). This Court has recognized that the INA requires the asylum applicant to prove she "(1) has a well-founded fear of persecution; (2) on account of a protected ground; (3) by an organization that the Salvadoran government is unable or unwilling to control." *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015).[1]

An applicant can establish a "well-founded fear of persecution" in two ways. First, the applicant "may show that [s]he was subjected to past persecution, in which case [s]he is entitled to a rebuttable presumption that [s]he has a well-founded fear of future persecution." *Tairou*, 909 F.3d at 707 (citation omitted). Alternatively, "the applicant may show that [s]he has a well-founded fear of *future* persecution. *Id.* (emphasis added) (citation omitted).

We have defined "persecution," in turn, to "involve[] the infliction or threat of death, torture, or injury to one's person or freedom, on account of one of the enumerated grounds in the refugee definition." *Li*, 405 F.3d at 177 (quoting *Kondakova v. Ashcroft*, 383 F.3d 792, 797 (8th Cir.2004)). A successful applicant must show that a protected ground "was

---

[1] Withholding of removal "require[s] the applicant to establish a 'clear probability' of persecution, rather than the less stringent 'well-founded fear' of persecution that will suffice to make out an asylum claim." *Salgado-Sosa v. Sessions*, 882 F.3d 452, 456 (4th Cir. 2018).

or will be *a* central reason for [her] persecution." *Oliva v. Lynch*, 807 F.3d 53, 59 (4th Cir. 2015) (quoting *In re W-G-R-*, 26 I. & N. Dec. 208, 224 (BIA 2014)). That is, a protected ground must be "'at least one central reason for' the feared persecution" but need not be the only reason. *Crespin-Valladares*, 632 F.3d at 127 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). However, a protected ground may not be merely "incidental, tangential, superficial, or subordinate to another reason for harm." *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009) (quoting *In re J-B-N-*, 24 I. & N. Dec. 208, 214 (BIA 2007)).

Here the IJ found, and the BIA agreed, that Sorto-Guzman received a credible death threat during the December 2015 incident with a nexus to her statutorily protected ground of religion. However, the IJ found that Sorto-Guzman did not establish she faced past persecution because, regarding the December 2015 incident, "the physical mistreatment . . . when considered along with the threat that never came to fruition simply does not rise to the level of persecution." A.R. 57. The IJ also found that the December 2015 incident "was a one-time isolated incident." A.R. 57. The BIA agreed that the incident did not rise to the level of persecution.

The IJ and the BIA erred in not finding that she experienced past persecution. As discussed, "we have expressly held that 'the threat of death qualifies as persecution.'" *Hernandez-Avalos*, 784 F.3d at 949 (quoting *Crespin-Valladares*, 632 F.3d at 126); *see also Li*, 405 F.3d at 177. For example, in *Tairou*, this Court reversed the BIA's determination that a petitioner had not suffered persecution in his home country, holding that "the BIA's conclusion as to past harm contravenes our express and repeated holding

9

that the 'threat of death' qualifies as persecution." 909 F.3d at 707 (quoting *Hernandez-Avalos*, 784 F.3d at 949). Specifically, this Court has held that "the threat of death *alone* constitutes persecution, and [an applicant] is not required to additionally prove long-term physical or mental harm to establish past persecution." *Id.* at 707–08 (emphasis added).

Like in *Tairou*, by discounting the death threat Sorto-Guzman received on account of her religion, the IJ and the BIA ignore our clear precedent. But let us be clear one more time: "the threat of death *alone* constitutes persecution." *Id.* (emphasis added). We have repeatedly refused to discount the seriousness of a death threat. In *Crespin-Valladares*, for example, we rejected the BIA's conclusion that the death threats Crespin-Valladares received were "mere threats and harassment," saying that such a conclusion "contravenes our express holding that the 'threat of death' qualifies as persecution." 632 F.3d at 126 (quoting *Li*, 405 F.3d at 177). And in *Tairou*, we refused to allow the BIA to discount credible death threats because Tairou did not suffer major physical injuries or long-term mental harm. 909 F.3d at 708.

Today, we similarly refuse to discount a credible death threat, as the IJ and the BIA did here, because it "never came to fruition." A.R. 57. To do so would not only defy our precedent but would also create an untenable standard for asylum seekers. We similarly reject the government's argument that death threats alone, "unaccompanied by severe physical abuse or torture, do not constitute 'persecution.'" Resp. Br. 13.

The seriousness of the threat Sorto-Guzman received is corroborated by the repeated harassment, violence, and death threats she repeatedly suffered at the hands of the same Mara 18 members. *See* A.R. 88–89 (explaining that the same individuals who threatened

her life outside the Catholic church in December 2015 attacked her again in January 2016 and February 2016).  To be clear, we are not deciding—one way or the other—whether the BIA or the IJ correctly ruled those subsequent threats had no nexus to a protected ground.  But even if these threats were not made because of Sorto-Guzman's religion, they nonetheless bear on the seriousness of the *initial* threat, the one everyone agrees was made because of Sorto-Guzman's attending a church and wearing a crucifix.  Sorto-Guzman took the December 2015 threat so seriously that she stopped attending Catholic services or wearing her crucifix necklace.  It makes good, common sense that any subsequent threats from the same persons, regardless of why they were made, would make Sorto-Guzman permanently afraid to express her religious beliefs.

In sum, we hold that the IJ's decision, which the BIA adopted, blatantly ignored our long line of cases establishing that the threat of death alone establishes past persecution.  This was legal error, and therefore, an abuse of discretion.  *See Cordova v. Holder*, 759 F.3d 332, 337 (4th Cir. 2014).  We hold that Sorto-Guzman has established she was subjected to past persecution in El Salvador.[2]  She is thereby entitled to the presumption of a well-founded fear of future persecution.  *Li*, 405 F.3d at 176; 8 C.F.R. § 208.13(b)(1).  The IJ and the BIA erred in not affording Sorto-Guzman this presumption, which would

[2] Sorto-Guzman argues, in the alternative, that the IJ and the BIA erred in finding that she failed to establish a well-founded fear of future persecution.  We will not answer that question today.  Because we hold that she properly established past persecution, the proper remedy is to remand the case to the BIA to consider the question of whether DHS can rebut the presumption that Sorto-Guzman has a well-founded fear of future persecution.

11

have then shifted the burden to DHS to rebut the presumption. *Ngarurih v. Ashcroft*, 371 F.3d 182, 187 (4th Cir. 2004); 8 C.F.R. § 1208.13(b)(1)(i).

We do not decide whether the DHS can rebut this presumption. Instead, for the foregoing reasons, we remand to the BIA to determine whether the DHS can rebut the presumption that Sorto-Guzman has a well-founded fear of future persecution. If on remand, the BIA concludes that Sorto-Guzman is eligible for asylum, it should reconsider her withholding of removal claim. *See Hernandez-Avalos*, 784 F.3d at 954 n.11. However, Petitioners failed to address the additional ground provided by the IJ and the BIA in rejecting their CAT claim—that Sorto-Guzman did not demonstrate that authorities in El Salvador would turn a blind eye to any future torture. Thus, Sorto-Guzman has not carried her burden on her CAT claim and we decline to remand that claim.

Accordingly, the petition for review is

*GRANTED AND REMANDED.*