# Matter of E-M-F-S-, et al., Respondents

*Decided January 9, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Death threats alone rarely rise to the level of persecution and only do so if they are objectively credible and issued by a person or persons with the immediate ability to carry them out.

FOR THE RESPONDENT: Ernest Bradley, Esquire, Miami, Florida

BEFORE: Board Panel: MALPHRUS, Chief Appellate Immigration Judge; VOLKERT, Appellate Immigration Judge; MCCLOSKEY, Temporary Appellate Immigration Judge.

MALPHRUS, Chief Appellate Immigration Judge:

In a decision issued on November 27, 2024, the Immigration Judge denied the respondents' applications for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture ("CAT").[1] Sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2024). The Immigration Judge denied the applications in part because the respondents had not demonstrated that the death threats they received rose to the level of persecution. The respondents appealed.[2] We will dismiss the appeal.

---

[1] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States on Nov. 20, 1994). 8 C.F.R. § 1208.16(c) (2025); 8 C.F.R. 1208.18(a) (2020).

[2] The respondents are the lead respondent, the male respondent, and their minor children. The lead respondent and minor children seek asylum as derivative beneficiaries of the male respondent's application. INA § 208(b)(3)(A), 8 U.S.C. § 1158(b)(3)(A); 8 C.F.R. § 1208.3(a)(1) (2025). The lead respondent and minor respondents have not filed separate applications and are not entitled to assert a derivative claim for withholding of removal and CAT protection. *See Matter of A-K-*, 24 I&N Dec. 275, 279–80 (BIA 2007). However, the Immigration Judge treated the lead respondent as having filed a separate application for relief and evaluated her claims independently from the male respondent. For the purposes of this decision, we will treat the lead respondent and male respondent as having

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondents are natives and citizens of Peru.  The lead respondent was a news broadcaster and television host of a well-known Peruvian news channel, and the male respondent was a producer on her television show. After former Peruvian President, Pedro Castillo, gave an interview—that turned hostile—with another reporter at the news station where the lead respondent and the male respondent both worked, the respondents suffered threats and harassment by the former president's supporters.  The respondent was physically pushed and insulted on numerous occasions as she left the news station.  The respondents also received two anonymous written death threats left on their doorstep, one week apart, one of which was accompanied by three bullets.  The respondents saw a young man running away from their home after they received the second threat.  After the second death threat, the respondents reported the incident to the police and resigned from their positions at the news channel.  The respondents left Peru approximately 6 months after the second death threat.

The Immigration Judge found that the respondents had not suffered harm rising to the level of persecution.  The Immigration Judge also determined that the respondents had not established a well-founded fear of future persecution because although the lead respondent was threatened on account of her imputed political opinion, their fear of persecution was not objectively reasonable and the respondents could safely and reasonably relocate within Peru.  Additionally, the Immigration Judge denied the respondents' application for CAT protection.  This appeal followed.

## II.  ANALYSIS

An applicant seeking asylum bears the burden of demonstrating that he or she is a refugee within the meaning of section 101(a)(42)(A) of the INA, 8 U.S.C. § 1101(a)(42)(A) (2024).  *See* INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A).  "An applicant can establish refugee status by showing that he or she either suffered past persecution or has a well-founded fear of future persecution." *Matter of D-I-M-*, 24 I&N Dec. 448, 450 (BIA 2008); *see also* 8 C.F.R. § 1208.13(b) (2020).  To establish past persecution, the applicant must demonstrate that he or she (1) suffered harm rising to the level of persecution, (2) on account of a statutorily protected ground, and (3) committed by the government or by persons whom the government is

---

filed separate applications for asylum, withholding of removal, and CAT protection.  All references to the respondent in the singular refer to the lead respondent.

either unable or unwilling to control. *See Matter of J-G-T-*, 28 I&N Dec. 97, 99–100 (BIA 2020); 8 C.F.R. § 1208.13(b)(1). To establish a well-founded fear of persecution, an applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable. *See Matter of J-H-S-*, 24 I&N Dec. 196, 198 (BIA 2007), *aff'd sub nom. Shao v. Mukasey*, 546 F.3d 138 (2d Cir. 2008).

## A. Past Persecution

The Immigration Judge determined that the limited physical harm and two anonymous threats suffered by the respondents were not sufficiently severe to constitute persecution.[3] The respondents, however, argue that death threats alone are per se persecution. We review de novo whether harm rises to the level of persecution. *See Matter of A-S-B-*, 24 I&N Dec. 493, 497 (BIA 2008), *overruled on other grounds by Matter of Z-Z-O-*, 26 I&N Dec. 586 (BIA 2015).

On appeal, the respondents request that we adopt the approach of the United States Court of Appeals for the Fourth Circuit concerning death threats, which they argue is that death threats constitute persecution per se. *See Sorto-Guzman v. Garland*, 42 F.4th 443, 449 (4th Cir. 2022) ("[T]his Court has held that 'the threat of death *alone* constitutes persecution . . . .'" (quoting *Tairou v. Whitaker*, 909 F.3d 702, 707–08 (4th Cir. 2018))); *see also Chicas-Machado v. Garland*, 73 F.4th 261, 265 (4th Cir. 2023); *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015); *Crespin-Valladares v. Holder*, 632 F.3d 117, 126 (4th Cir. 2011). Having reviewed the Fourth Circuit case law the respondents cite, however, we are not persuaded that the Fourth Circuit categorically holds that all death threats qualify as persecution.

While we recognize the Fourth Circuit has stated that death threats alone constitute persecution, the factual circumstances of these cases have consistently included more than death threats alone. As the Second Circuit has noted, "many of the Fourth Circuit's cases finding persecution based on death threats involved aggravating circumstances."

---

[3] Contrary to the respondents' assertions on appeal, the Immigration Judge did not conclude that the lead respondent suffered past persecution. Rather, the Immigration Judge concluded that the lead respondent's past threats were on account of her imputed political opinion but that the respondents had not established that they had suffered harm rising to the level of persecution. *See Martinez v. U.S. Att'y Gen.*, 992 F.3d 1283, 1291 (11th Cir. 2021) ("To establish asylum based on past persecution, the applicant must prove (1) that [he] was persecuted, and (2) that the persecution was on account of a protected ground." (citation omitted)).

*KC v. Garland*, 108 F.4th 130, 136 n.4 (2d Cir. 2024).  For example, in *Sorto-Guzman*, 42 F.4th at 446, 449–50, the Fourth Circuit found past persecution where the respondent had been threatened with death, beaten, nearly sexually assaulted, and robbed by gang members.  Likewise, in *Hernandez-Avalos*, 784 F.3d at 947, 949, the Fourth Circuit found the alien had a well-founded fear of future persecution where the cousin of her husband had been murdered by gang members and she was twice threatened with a gun to her head.  Finally, in *Crespin-Valladares*, 632 F.3d at 120, 126–27, the Fourth Circuit found persecution where the alien was threatened by gang members after gang members murdered his cousin and attempted to murder his uncle.

Moreover, despite statements in some cases that death threats alone are persecution, the Fourth Circuit has not found *all* death threats to be persecution.  In *Cortez-Mendez v. Whitaker*, 912 F.3d 205, 209 n.* (4th Cir. 2019), for instance, the Fourth Circuit declined to conclude that the death threat against the alien constituted persecution where it was "communicated through two third parties, across country borders, and a decade before [the alien] sought legal protection."  Thus, we are not convinced by the respondents' assertion that the Fourth Circuit takes such a broad approach as to conclude that death threats constitute persecution per se.  Immigration Judges interpreting Fourth Circuit law should not apply it in that categorical manner.

Even if the Fourth Circuit's case law were interpreted to hold that death threats constitute persecution per se, no other circuit court has concluded that death threats categorically rise to the level of persecution.  In fact, several circuit courts have observed that death threats alone rarely rise to the level of persecution.  *See, e.g.*, *Brizuela v. Garland*, 71 F.4th 1087, 1093 (8th Cir. 2023) (holding that threats rarely rise to the level of persecution and only when they are "so menacing as to cause significant actual suffering or harm" (citation omitted)).  The Second Circuit has held that "'unfulfilled threats alone' rarely constitute persecution" and that "a death threat may be too speculative or specious—as opposed to imminent or concrete—to constitute persecution."  *KC*, 108 F.4th at 135–36 (citation omitted).  Likewise, the Ninth Circuit has observed that while "'death threats alone can constitute persecution,' they constitute 'persecution in only a small category of cases.'"  *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019) (citations omitted).

The Eleventh Circuit, in which jurisdiction in this case arises, has held that "[a] credible death threat by a person who has the immediate ability to act on it constitutes persecution regardless of whether the threat is

successfully carried out." *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1333–34 (11th Cir. 2010); *cf. Martinez v. U.S. Att'y Gen.*, 992 F.3d 1283, 1292 (11th Cir. 2021) (affirming the Board's determination that a threat by an officer to make the alien "disappear" during his detention was menacing but not persecution). This approach is similar to that of the Ninth Circuit, which has held that for a credible death threat to rise to the level of persecution, the group issuing the death threat must have "the will or the ability to carry it out." *Corpeno-Romero v. Garland*, 120 F.4th 570, 578 (9th Cir. 2024) (quoting *Aden v. Wilkinson*, 989 F.3d 1073, 1083 (9th Cir. 2021)).

Other circuit courts have also focused on imminence or the likelihood that a threat will be carried out when finding that "credible" death threats can constitute persecution in some circumstances.[4] In finding a respondent's death threats by the MS-13 constituted persecution, the Fifth Circuit noted that Salvadoran authorities had deemed the threats "credible and imminent" and numerous Salvadoran officials told the respondent to flee the country. *Argueta Hernandez v. Garland*, 87 F.4th 698, 708–09 (5th Cir. 2023), *abrogated on other grounds by Riley v. Bondi*, 606 U.S. 259 (2025). Likewise, in evaluating whether a respondent's death threats by Sri Lankan government officials constituted persecution, the Seventh Circuit evaluated whether the actions of the officials suggested a likelihood that the threat would be fulfilled. *See Pathmakanthan v. Holder*, 612 F.3d 618, 623–24 (7th Cir. 2010). The Third Circuit has explained that in determining whether a threat is concrete and menacing so as to constitutes persecution, "[t]he key is not a threat's imminence, but rather its likelihood, which is 'subsumed in the inquiry as to whether the threat is "concrete."'" *Blanco v. Att'y Gen. U.S.*, 967 F.3d 304, 312 (3d Cir. 2020) (citation omitted). Finally, the Tenth Circuit has held that threats "only rarely" constitute persecution and only when they are "immediate and menacing." *Matumona v. Barr*, 945 F.3d 1294, 1305 (10th Cir. 2019) (quoting *Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003)).

Any analysis of conduct rising to the level of persecution requires the consideration of "the cumulative effect of the allegedly persecutory

---

[4] A few circuit courts have stated generally that credible death threats can constitute persecution in some circumstances but have not explained what renders a threat credible. *See Aguilar-Escoto v. Garland*, 59 F.4th 510, 516 (1st Cir. 2023) ("We have long held that 'credible, specific threats can amount to persecution if they are severe enough'—particularly if they are death threats" (citation omitted)); *Japarkulova v. Holder*, 615 F.3d 696, 700 (6th Cir. 2010) (holding that credible death threats can constitute persecution even absent physical abuse).

incidents." *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1008 (11th Cir. 2008); *accord Salguero Sosa v. Garland*, 55 F.4th 1213, 1218–19 (9th Cir. 2022). The Ninth Circuit has held that a threat may constitute persecution when it is "specific and menacing and . . . accompanied by evidence of violent confrontations, near-confrontations and vandalism." *Id.* (quoting *Mashiri v. Ashcroft*, 383 F.3d 1112, 1119 (9th Cir. 2004)). Other circuit courts have agreed that "past persecution may be found . . . when the applicant demonstrates repeated threats combined with other forms of severe mistreatment." *Martinez*, 992 F.3d at 1292; *accord Hernandez-Mendez v. Garland*, 86 F.4th 482, 487 (1st Cir. 2023); *Herrera-Reyes v. Att'y Gen. of U.S.*, 952 F.3d 101, 106–08 (3d Cir. 2020). It is necessary to consider death threats not in isolation but as part of the totality of the applicant's past mistreatment. *See De Santamaria*, 525 F.3d at 1008. In some cases, the "severe mistreatment" apart from the death threats may be the determining factor in establishing past persecution. *Martinez*, 992 F.3d at 1292.

The Board has not adopted a specific standard for when a death threat may constitute persecution. In *Matter of T-Z-*, 24 I&N Dec. 163, 169 (BIA 2007), we stated that a threat of forced abortion may rise to persecution "when a reasonable person would objectively view the threats as genuine, and the threatened harm, if carried out, would meet or exceed the threshold level of harm for past persecution." However, a death threat that is vague, anonymous, or used merely to intimidate, by itself, does not rise to the level of severity required to establish persecution. *See Matter of A-E-M-*, 21 I&N Dec. 1157, 1159 (BIA 1998) (holding that an anonymous, painted death threat on the exterior of a respondent's house did not rise to the level of persecution). As noted above, death threats alone rarely rise to the level of persecution. *See KC*, 108 F.4th at 135–36; *Brizuela*, 71 F.4th at 1093; *Duran-Rodriguez*, 918 F.3d at 1028. Consistent with the Eleventh and Ninth Circuits, we hold that they only do so if they are objectively credible and issued by a person or persons with the immediate ability to carry them out.

An asylum applicant bears the burden to establish that he or she suffered harm rising to the level of persecution. *See* 8 C.F.R. § 1208.13(a). In the case of death threats, the applicant must produce evidence of the ability of the persecutor to imminently carry out the threat. *See Corpeno-Romero*, 120 F.4th at 578. As stated by the Ninth Circuit, "'it is the conduct of the persecutor' that is relevant to evaluating whether past treatment rises to the level of persecution—not 'the level of harm' or 'subjective suffering' the [applicant] experienced." *Antonio v. Garland*, 58 F.4th 1067, 1074 (9th Cir. 2023) (citation omitted). Consequently, the appropriate inquiry is

not the subjective suffering of the applicant, but the objective treatment by the alleged persecutor.[5]

We have construed the term persecution to include "either a threat to the life or freedom of, or the infliction of suffering or harm upon, those who differ in a way regarded as offensive." *See Matter of Acosta*, 19 I&N Dec. 211, 222–23 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987). While threats to life and freedom can constitute persecution, an applicant seeking to prove that he or she suffered harm rising to the level of persecution due to death threats must show that he or she suffered more than mere harassment or intimidation; in other words, the applicant must prove objectively that the threat was not hollow. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (holding that "'persecution' is an 'extreme concept,' requiring 'more than a few isolated incidents of verbal harassment or intimidation,' and that '[m]ere harassment does not amount to persecution.'" (citation omitted)); *Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000) ("Threats themselves are sometimes hollow and . . . claims of threats are hard to disprove."). Thus, the applicant must establish that the purported persecutor actually possessed the ability to imminently follow through on the threat.

In this case, the respondents received two anonymous written death threats outside of their home one week apart, one of which was accompanied by three bullets. While the respondents testified that they saw a young man running away from their home after they received the second threat, they have not presented any evidence concerning the individuals who sent these threats or their ability to imminently carry them out. *Cf. Diallo*, 596 F.3d at 1333–34 (finding past persecution where a respondent was threatened with death by the same soldiers who killed his brother and was able to avoid the same fate by escaping). The respondents have also not shown that the pushing and insults by unknown individuals outside the news station where they worked render the threats credible, or that their cumulative harm rises to the level of persecution. *See Martinez*, 992 F.3d at 1292 (holding that the

---

[5]   We acknowledge that several circuit courts have stated that a death threat may constitute persecution if it is "so menacing as . . . to cause actual suffering or harm." *KC*, 108 F.4th at 135 (citation omitted); *accord Corpeno-Romero*, 120 F.4th at 579; *Brizuela*, 71 F.4th at 1093; *Blanco*, 967 F.3d at 312–13; *Matumona*, 945 F.3d at 1305; *Japarkulova*, 615 F.3d at 701. While we agree that the infliction of suffering or harm is a key component to establishing past persecution, we caution that the applicant's subjective harm, by itself, is insufficient to demonstrate that an alleged persecutor's death threat constituted persecution. *See Antonio*, 58 F.4th at 1074; *see also Flores Molina v. Garland*, 37 F.4th 626, 636 (9th Cir. 2022) (stating that the "severity of [the respondent's] injuries is not dispositive to whether the threats and violence constituted persecution").

applicant's cumulative mistreatment did not rise to the level of persecution where he was threatened, detained, and released without harm); *Sepulveda*, 401 F.3d at 1231 (concluding that menacing phone calls and threats to the applicant, her family members, and other members of the her group did not rise to level of persecution).  Accordingly, we agree with the Immigration Judge that the respondents have not met their burden to establish that they suffered harm rising to the level of persecution.  *See* 8 C.F.R. § 1208.13(a), (b)(1).

Accordingly, the respondents did not suffer past persecution, and the Immigration Judge properly determined that they are not presumed to have a well-founded fear of future persecution.  *See Matter of D-I-M-*, 24 I&N Dec. at 450; 8 C.F.R. § 1208.13(b)(1).  As the respondents' past mistreatment did not rise to the level of persecution, they "must prove that [they] have reason to believe [they] will be treated *worse*, *i.e.*, persecuted, upon return to [their] native country."  *Li v. Gonzales*, 405 F.3d 171, 177 (4th Cir. 2005).

## B. Future Persecution

We affirm the Immigration Judge's determination that the respondents have not established a well-founded fear of future persecution in Peru.  We agree with the Immigration Judge that the respondents have not established an objectively reasonable fear of persecution because they have not shown that supporters of Pedro Castillo have been looking for them or would seek to harm them upon their return.  *See Matter of J-H-S-*, 24 I&N Dec. at 198. As found by the Immigration Judge, the respondents continued to live in Peru unharmed for 6 months following the second threat against them, and Pedro Castillo was removed from office and jailed in Peru.

Contrary to the respondent's appellate assertions, the Immigration Judge considered the country conditions evidence.  The Immigration Judge permissibly found that freedom of expression was generally respected in Peru and that although journalists reporting on antigovernment protests have suffered some aggression, the country conditions evidence did not establish that this aggression against journalists rises above mere harassment and intimidation to reach the level of persecution.  *See Murugan v. U.S. Att'y Gen.*, 10 F.4th 1185, 1194–95 (11th Cir. 2021) (finding that the Immigration Judge properly weighed the record evidence and determined that the applicant had not demonstrated that the mistreatment of similarly situated persons was sufficient to establish a pattern or practice of persecution).  Moreover, the Immigration Judge found that the respondents were not similarly situated to these journalists because they did not report on the protests.

Additionally, the Immigration Judge found that the respondents could safely and reasonably relocate elsewhere in Peru. *See* 8 C.F.R. § 1208.13(b)(2)(ii) (providing that an asylum applicant does not have a well-founded fear of future persecution if the applicant can avoid persecution by relocating to another part of the country of removal); *see also Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 805 (11th Cir. 2016) (stating that an applicant who has not suffered past persecution must show that internal relocation is not reasonable), *overruled in part on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023). As the respondents do not meaningfully contest this dispositive finding, we deem this issue waived. *See Matter of O-R-E-*, 28 I&N Dec. 330, 336 n.5 (BIA 2021).

Thus, we affirm the Immigration Judge's determination that the respondents did not establish that they possess a well-founded fear of persecution and therefore have not met their burden of proof for asylum. INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i). Because the respondents did not meet their burden of proof for asylum, it follows that they cannot satisfy the more stringent standard of a clear probability for withholding of removal.[6] *See Sepulveda*, 401 F.3d at 1232–33; *Matter of M-D-C-V-*, 28 I&N Dec. 18, 34 (BIA 2020).

## C. Eligibility for CAT Protection

For the reasons stated by the Immigration Judge, we will also affirm the Immigration Judge's denial of CAT protection. To qualify for protection under the CAT, the respondents bear the burden to show that they would more likely than not suffer torture by, at the instigation of, or with the consent or acquiescence of a public official or other person acting in an official capacity upon their removal. *See* 8 C.F.R. § 1208.16(c)(2) (2025); 8 C.F.R. § 1208.18(a)(1) (2020). We agree with the Immigration Judge's conclusion that the respondents did not establish that they will more likely than not be tortured upon their removal with the consent or acquiescence of the Peruvian government.

In this case, the respondents have not suffered past harm rising to the level of persecution, much less torture. *See* 8 C.F.R. §§ 1208.16(c)(3)(i); 1208.18(a)(2). As stated above, the respondents also do not contest the Immigration Judge's determination that they could relocate elsewhere in

---

[6] As the above grounds are dispositive of the respondents' claims for asylum and withholding of removal, we need not address the respondents' remaining arguments related to this relief. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

Peru where they would not likely be tortured. *See* 8 C.F.R. § 1208.16(c)(3)(ii). The respondents have also not sufficiently established that the supporters of Pedro Castillo would seek them out and attempt to torture them upon their removal. *See Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1324 (11th Cir. 2007) (stating that a CAT claim may fail if the applicants do not establish that they "would be *individually* and *intentionally* singled out for harsh treatment"). Moreover, we agree with the Immigration Judge that the ineffectiveness of Peruvian police in preventing attacks against members of the media does not demonstrate that the Peruvian government would consent or acquiesce to the respondents' future harm. *See Edwards v. U.S. Att'y Gen.*, 97 F.4th 725, 744 (11th Cir. 2024) (finding that the police's inability to apprehend a perpetrator is not a basis for finding government acquiescence); 8 C.F.R. § 1208.18(a)(1). Accordingly, we will dismiss the respondents' appeal of the Immigration Judge's denial of asylum, withholding of removal, and protection under the CAT.

**ORDER:** The respondents' appeal is dismissed.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* INA § 274D, 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2025). Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than 2 years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a) (2024).